## MUSTARD et al. v. ELWOOD.

### (Circuit Court of Appeals, Ninth Circuit. May 10, 1915.)

### No. 2513.

1. INTOXICATING LIQUORS ⊚⇒55—LICENSES—"BARROOM."

Pen. Code Alaska, § 468, provides that a retail or barroom license shall be required of every hotel, tavern, boat, barroom, or other place in which intoxicating liquors are sold by retail, and that every place where liquors are sold in quantities as prescribed for retail dealers by the Revised Statutes shall be regarded as a "barroom." An unincorporated social club, organized for the entertainment of its members, purchased intoxicating liquors with the common funds of the club, and dispensed them to its members and guests to be drunk upon the premises, charging therefor a price per drink or per bottle, fixed by it. *Held*, that it was selling intoxicating liquors, and was required to have a license.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. §§ 55, 56; Dec. Dig. ⊚⇒55.

For other definitions, see Words and Phrases, First and Second Series, Barroom.]

2. STATUTES ⊚⇒224—CONSTRUCTION—ADOPTION OF STATUTE SUBSEQUENT TO JUDICIAL CONSTRUCTION.

Congress, having enacted for Alaska a license law material parts of which are copied from a similar law for the District of Columbia, must be deemed to have enacted it with the construction previously placed upon the act enacted for the District of Columbia by the highest court of that district

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 300, 302–306; Dec. Dig. ⊚⇒224.]

3. CRIMINAL LAW ⊚⇒13—CRIMINAL OFFENSES—STATUTORY PROVISIONS.

Pen. Code Alaska, § 472, provides that any one engaging in the sale of intoxicating liquors, who is thereby required to have a license, without first having obtained a license, shall upon conviction be fined not less than $100 nor more than $2,000, or be imprisoned for not less than one month nor more than one year. *Held*, that the statute is not indefinite and uncertain, as failing to disclose the place of imprisonment, or to define the nature of the offense; it being clear, from the punishment prescribed, that the section deals with the offense as a misdemeanor and not as a felony.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 13, 14; Dec. Dig. ⊚⇒13.]

Ross, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Second Division of the District of Alaska; J. R. Tucker, Judge.

Action by E. C. Elwood against John H. Mustard and others. From a judgment in favor of plaintiff, defendants appeal. Affirmed.

G. J. Lomen and O. D. Cochran, both of Nome, Alaska, and W. H. Metson, Metson, Drew & MacKenzie, Thos. R. White, and Fink & White, all of San Francisco, Cal., for appellants.

F. M. Saxton, U. S. Atty., of Nome, Alaska, amicus curiæ.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

GILBERT, Circuit Judge. The plaintiff, on behalf of himself and a minority of the members of the "Eni" or "Log Cabin Club," of

Nome, Alaska, brought this suit for the purpose of testing the right of said club to furnish intoxicating liquors to its members without having first applied for and secured a barroom license under the license law of the territory. The court below overruled a demurrer to the complaint, which was interposed on the ground that the same stated no cause of action, and, the defendants declining to plead further, judgment was rendered in accordance with the prayer of the complaint.

[1] The question presented on the appeal is whether an unincorporated social club, organized for the entertainment of its members, which purchases intoxicating liquors with the common funds of the club, and dispenses the same to its members and guests to be drunk upon the premises, charging therefor a price per drink or per bottle, fixed by the club, sells intoxicating liquors within the meaning of the license law. The question is one upon which the decisions are at variance, but we think the weight of authority and the better reasoning lead to the conclusion that such a transaction is a sale. South Shore Country Club v. People, 228 Ill. 75, 81 N. E. 805, 12 L. R. A. (N. S.) 519, 119 Am. St. Rep. 417, 10 Ann. Cas. 383; Spokane v. Baughman, 54 Wash. 315, 103 Pac. 14; State v. Kline, 50 Or. 426, 93 Pac. 237; Beauvoir Club v. State, 148 Ala. 643, 42 South. 1040, 121 Am. St. Rep. 82; State v. Easton Social Club, 73 Md. 97, 20 Atl. 783, 10 L. R. A. 64.

But it is said that ground for holding that Congress did not intend the provisions of the license law of Alaska to apply to clubs incorporated or organized for social and literary purposes is found in the fact that in the act passed for the regulation of the sale of intoxicating liquors in the District of Columbia March 3, 1893 (27 Stats. 563, c. 204), express mention was made of clubs, whereas, in the Alaska license law, enacted in 1899 (Act March 3, 1899, c. 429, 30 Stat. 1337 et seq.), no mention was made of such clubs. The only mention of clubs in the District of Columbia act is in section 6, which regulates the business of liquor selling, and prescribes the hours during which liquor may be sold. That section contains a proviso that clubs, if they so desire, may obtain a license to sell for longer hours than others. The language of the proviso is:

"And provided, further, the said excise board may in its discretion issue a license to any duly incorporated club on * * * petition of the officers of the club, and that the said excise board may in its discretion grant a permit to such club to sell intoxicating liquors to members and guests between such hours as the Board aforesaid may designate in said permit."

In Army and Navy Club v. Dist. of Columbia, 8 App. D. C. 544, decided on May 19, 1896, the Court of Appeals of the District of Columbia construed the act of May 3, 1893, above referred to. The club had denied its liability to pay the license fee fixed by the act. The court affirmed its liability, not by virtue of implied authority contained in the terms of the proviso quoted above, but under the terms of section 8 of the act, which declares that a barroom license shall be required for every hotel, tavern, barroom, or other place in which intoxicating liquors are sold by retail, and which defines the word "barroom" as:

"Every place where distilled, malt, or fermented wines, liquors, or cordials are sold in quantities as prescribed for retail dealers by section 3244, Revised Statutes of the United States, to be drunk upon the premises, shall be regarded as a barroom."

[2] The language of that definition is precisely repeated in section 468 of the Alaska law, and in fact all the portions of that law which are essential to the decision of the present case are copied from the law for the District of Columbia. This is especially true of sections 462, 468, and 472, which are, respectively, sections 1, 8, and 12 of the act for the District of Columbia. In the case just cited, it was the contention of the club that the proviso in section 6 gave them the option to apply for a license or not, as they might see fit. But the court held that the club was a barroom within the meaning of the definition contained in section 8, and said that the proviso in section 6 was additional proof that the well-known usage of such clubs to furnish liquor to members was, in the contemplation of the framers of the law, a sale, and nothing else. Congress, having thereafter enacted the law for Alaska, must be deemed to have enacted it with the construction placed upon the similar act by the highest court of the District of Columbia, and that construction is controlling here. The proviso referring to clubs was omitted from the license law of Alaska, for the reason that that law contains no regulation of the hours when liquor may be sold.

There is nothing in the other provisions of the statute for Alaska which shows the intention of Congress to exclude clubs from the requirement to obtain a license. The proposition that evidence of such an intention is found in the provision that a license shall not be granted to any person to conduct such business within 400 feet of a private house or public school, etc., is not sustainable, for that provision is also found in the act for the District of Columbia. Other provisions of the act for Alaska, such as those which require that the person receiving the license shall frame it in a conspicuous place, etc., and that the marshal or United States commissioner shall have opportunity to examine the premises where liquor is sold, are not incompatible with the intention of Congress elsewhere expressed that a club is a person, corporation, or company within the meaning of the act. The important features of the act are:

"A retail or barroom license shall be required of every hotel, tavern, boat, barroom, or other place in which intoxicating liquors are sold by retail"

—and the definition of a barroom as a place where liquor is sold to be drunk upon the premises.

[3] No merit is found in the contention that section 472, which prescribes the punishment for violation of the act, is indefinite and uncertain, in that it fails to prescribe the place of imprisonment, and does not define the nature of the offense, whether a felony or misdemeanor. The section declares that violators of the provisions of the act shall, upon conviction, be fined not less than $100, nor more than $2,000, or be imprisoned for not less than one month, nor more than one year. It is clear that the section deals with the offense as a misdemeanor, and not as a felony, for whether the terms of the prescribed punishment are measured by the definition of a felony found

in the new Criminal Code, or by the law as it was applied before the new Code went into effect, it is clear that the punishment provided is not for a felony.

The judgment is affirmed.

ROSS, Circuit Judge (dissenting). The sole question in this case is whether a certain incorporated club, organized "in good faith, for social and literary purposes, and not for profit, and not with any intent to circumvent or violate any of the laws of the district of Alaska," and owning and maintaining a clubhouse in the city of Nome, of that territory, and "furnished as a reading room, dining room, billiard and pool room, also a kitchen and buffet or bar, of the value of about fifteen thousand dollars, and known as the 'Log Cabin,'" the monthly expenses of which are about $1,000, and the receipts of which, from all sources, which are derived from its members, do not materially exceed the expenses, is required to procure a license as authority to dispose of wines and liquors to its members.

The status of such clubs in respect to that question, under the statutes and ordinances of the various states, has been the subject of consideration by the Supreme Court of many of the states, the decisions of which are irreconcilable, and which conflict has been often referred to by text-writers. It is fair to presume, therefore, that Congress was well aware of the conflicting state decisions. And such presumption is strengthened into practical certainty by the fact that in passing, on the 3d day of March, 1893 (27 Stat. 563, c. 204), the act entitled "An act regulating the sale of intoxicating liquors in the District of Columbia," prohibiting, among other things (except as provided in the act), the sale within the District of Columbia of any intoxicating liquor, therein declared "to include whisky, brandy, rum, gin, wine, ale, porter, beer, and all other fermented and distilled liquors," and creating an excise board to which all applications for license to sell such intoxicating liquors should be presented Congress expressly provided that:

"The said excise board may in its discretion issue a license to any duly incorporated club on the petition of the officers of the club, and that the said excise board may in its discretion grant a permit to such club to sell intoxicating liquors to members and guests between such hours as the board aforesaid may designate in such permit."

By section 5 of that act Congress made various provisions respecting applications "for a barroom license," and, among other things, defined as constituting a barroom "every place where intoxicating liquors are sold to be drunk on the premises shall, for the purpose of this act be regarded and considered a barroom, and the possession of intoxicating liquors and the selling or disposing of the same to be drunk on the premises shall constitute and make the place a barroom," with certain provisos not important to be mentioned.

It is thus seen that Congress, in its enactment of March 3, 1893, supra, did not leave any uncertainty as to whether in the District of Columbia a duly incorporated club is required to secure a license for the sale of intoxicating liquors. In the light of that enactment we are to consider its legislation for the district of Alaska upon the subject

in question, in none of which has there ever been any express provision for a license to an incorporated club. By section 14 of the act of May 17, 1884, providing a civil government for Alaska (23 Stat. 24, 28, c. 53), it was enacted that:

"The importation manufacture and sale of intoxicating liquors in said district [of Alaska] except for medicinal, mechanical, and scientific purposes is hereby prohibited under the penalties which are provided in section nineteen hundred and fifty-five of the Revised Statutes for the wrongful importation of distilled spirits. And the President of the United States shall make such regulations as are necessary to carry out the provisions of this section."

By section 1955 of the Revised Statutes the President is given—

"power to restrict and regulate or to prohibit the importation and use   *   *   * of distilled spirits into and within the territory of Alaska.   *   *   * And any person willfully violating such regulations shall be fined not more than $500, or imprisoned not more than six months."

By the executive order of May 4, 1887, the landing of intoxicating liquors at any port or place in the territory of Alaska is prohibited, except upon a permit of the chief officer of the customs at such port or place, to be issued upon evidence satisfactory to such officer that the liquors are imported and are to be used solely for sacramental, medicinal, mechanical, and scientific purposes. By the executive order of March 12, 1892, the sale of intoxicating liquors for medicinal, mechanical, and scientific purposes can be made only by such persons in the territory as shall have obtained a special permit from the governor of the territory to sell intoxicating liquors therein upon certain specified conditions. Endleman v. United States, 86 Fed. 457, 30 C. C. A. 186.

By the Penal Code of Alaska of March 3, 1899, as amended and now embraced in the Compiled Statutes of that territory, the above-mentioned statutes and orders were repealed, and the following provisions enacted:

"Sec. 2569. That any person or persons, corporation, or company prosecuting or attempting to prosecute any of the following lines of business within the district of Alaska shall first apply for and obtain license so to do from a District Court or a subdivision thereof in said district, and pay for said license for the respective lines of business and trades as follows, to wit: [Enumerating various classes of business and the amounts to be paid per annum]."

The next section provides a penalty for doing business in violation of the provisions of section 2569. Section 2571 is as follows:

"That no person, corporation, or company shall sell, offer for sale, or keep for sale, traffic in, barter, or exchange for goods in said district of Alaska any intoxicating liquors, except as hereinafter provided; but this shall not apply to sales made by a person under provisions of law requiring him to sell personal property. Wherever the term 'intoxicating liquors' is used in this act, it shall be deemed to include whisky, brandy, rum, gin, wine, ale, porter, beer, hoochinoo, and all spirituous, vinous, malt, or other fermented or distilled liquors."

Subsequent sections provide for the issuing of licenses and the proceedings to be taken therefor. Section 2577, so far as pertinent, is as follows:

"That the liquor licenses authorized and provided for by this act shall be of two classes, namely, wholesale and barroom.   *   *   * That the fee for a wholesale license shall be two thousand dollars per annum, and for a barroom

or retail license one thousand dollars per annum: Provided, that the fee for a retail license for road-houses on regular post-roads or trails where the population within two miles of the place where the business is to be conducted does not exceed fifty people, or for a steamboat or steamer operating on the inland rivers of Alaska during the season of open navigation, shall be five hundred dollars per annum: Provided, that said steamboat or steamer shall not be authorized to sell intoxicating liquor while in port or dock: And provided, that the words towns, camps, or settlements, as used in this act shall be construed to embrace the population within a radius of two miles of the place wherein the business is to be conducted under the license.

"That a retail or barroom license shall be required for every hotel, tavern, boat, barroom, or other place in which intoxicating liquors are sold at retail. * * *

"That every place where distilled, malt, or fermented wines, liquors, or cordials are sold in quantities as prescribed for retail dealers by section thirty-two hundred and forty-four of the Revised Statutes of the United States, to be drunk upon the premises, shall be regarded as a barroom; and the possession of malt, distilled, fermented, or any other intoxicating liquors, with the means and appliances for carrying on the business of dispensing the same to be drunk where sold, shall be prima facie evidence of a barroom within the meaning of this act, and the license therefor shall be known as a barroom license: Provided, that no license shall be granted for the sale of liquors at either wholesale or retail in any other than a substantial building which shall have cost for construction not less than five hundred dollars.

"Sec. 2578. That every person receiving a license to sell under this act shall frame it under glass and place it in a conspicuous place in his chief place of sale of such liquor, so that any one entering such place of sale may easily read such license.

"Sec. 2579. That all applicants for license and persons holding licenses shall allow the clerk of the court, or any United States marshal or deputy United States marshal, or any United States commissioner, full opportunity and every facility to examine at any time during business hours the premises where intoxicating liquor is sold, and for which a license has been asked or has been granted."

"Sec. 2581. That any one engaging in the sale of intoxicating liquors, as specified in this act, in the district of Alaska, who is required by it to have a license as herein specified, without first having obtained a license to do so as herein provided, or any person who shall engage in such sale in any portion of the district where the sale thereof is prohibited, upon conviction thereof shall be fined not less than one hundred dollars nor more than two thousand dollars, or be imprisoned for not less than one month nor more than one year; and upon every subsequent conviction of a like offense shall, in addition to the penalty above named, be imprisoned not less than two months nor more than one year."

Section 2582, among other things, provides:

"That no minor under sixteen years of age shall be allowed to enter any place where liquors are sold, other than a hotel, without the consent of the parent or guardian of such minor."

"Sec. 2584. That license for any of the purposes specified shall not be granted to any person to conduct such business within four hundred feet of a public schoolhouse, private school, or house of religious worship, except in such places of business as may have been located previous to the erection or occupation of such schoolhouse, private school, or house of religious worship owned or occupied in the district of Alaska, measured between the nearest entrance to each by the shortest course of travel between such place of business and the schoolhouse, private school, or house of religious worship."

I am of the opinion that the foregoing existing legislation of Congress for the territory of Alaska does not apply to a duly incorporated club for purely social and literary purposes, first, because it is reasonable to think that as Congress, in order to avoid the conflict and conse-

quent uncertainty that exists in the laws of the various states upon the subject, expressly declared in its legislation for the District of Columbia that that liquor legislation should apply to such clubs in that District, it would have made like specific reference to such clubs in its similar legislation for the territory of Alaska had it been its intention to include them therein; and, secondly, because the very language of the enactment for the district of Alaska clearly indicates to my mind that it was not intended to apply to such clubs. This I think apparent from each section of the statutes in which reference is made to the licensing of the liquor traffic. Throughout it is spoken of as a *business;* but to guard against any evasion of its requirements it specifically provided, as has been seen in section 2577:

"That every place where distilled, malt, or fermented wines, liquors, or cordials are sold in quantities as prescribed for retail dealers by section thirty-two hundred and forty-four of the Revised Statutes of the United States, to be drunk upon the premises, shall be regarded as a barroom; and the possession of malt, distilled, fermented, or any other intoxicating liquors, with the means and appliances for carrying on the business of dispensing the same to be drunk where sold, shall be prima facie evidence of a barroom within the meaning of this act, and the license therefor shall be known as a barroom license: Provided, that no license shall be granted for the sale of liquors at either wholesale or retail in any other than a substantial building which shall have cost for construction not less than five hundred dollars."

In other words, whatever the place, means, or appliances resorted to for *carrying on the business of dispensing* the wines, liquors, etc., "to be drunk where sold, shall be prima facie evidence of a barroom within the meaning of this act, and a license therefor shall be known as a barroom license." The next section—2578—also clearly indicates that the act was not intended to apply to incorporated clubs for purely social and literary purposes, for it expressly declares, as has been seen:

"That every person receiving a license to sell under this act shall frame it under glass and place it in a conspicuous place in his *chief place of sale* of such liquor, so that any one *entering such place of sale* [italics mine] may easily read such license."

The inapplicability of the act is further manifested by the next section—2579—which reads, as has been seen:

"That all applicants for license and persons holding licenses shall allow the clerk of the court, or any United States marshal or deputy United States marshal, or any United States commissioner, full opportunity and every facility to examine at any time *during business hours the premises* [italics mine] where intoxicating liquor is sold, and for which a license has been asked or has been granted"

—and by section 2581, which provides:

"That any one *engaging in the sale of intoxicating liquors as specified in this act* [italics mine] in the district of Alaska, who is required by it to have a license as herein specified, without * * * having obtained a license to do so as herein provided"

—shall be punished in a prescribed way upon conviction thereof. and is further manifested by the provisions of section 2584, which declares:

"That license for any of the purposes specified shall not be granted to any person *to conduct such business* [italics mine] within four hundred feet of a public school-house, private school, or house of religious worship"

—with certain exceptions not necessary to be stated.

A club organized for purely social and literary purposes has no "business hours," and is rarely, if ever, open to the public, but, on the contrary, is designed solely for the use, comfort, benefit, and enjoyment of its members and guests; and such an establishment "within four hundred feet of a public schoolhouse, private school, or house of religious worship" was not, I think, intended to be prohibited by Congress.