Ex parte DUNLAP.

(Third Division. Valdez. August 7, 1916.)

No. S/95.

1. JURY ☞29(3)—WAIVER—HABEAS CORPUS—TRIAL.

Petitioner was accused of selling intoxicating liquor without a license, waived trial by jury, and was found guilty, third conviction, before justice of the peace, and sentenced to one year in jail and a fine of $1,500. She asks to be discharged on habeas corpus, on the ground that she was tried without a jury, in violation of section 2, art. 3, Const. U. S., and the Sixth Amendment thereto. *Held*, the offense for which she was convicted was a misdemeanor, a petty offense, and petitioner might waive a jury trial in such case.

2. STATUTES ☞61—CONSTRUCTION.

An act of Congress will not be declared void, except in a clear case. Every possible presumption is in favor of the valid-

☞See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ity of the statute, and this continues until the contrary is shown beyond a rational doubt.

The petitioner was accused of selling intoxicating liquor without a license, in violation of section 2581, Compiled Laws of Alaska, which reads:

"That any one engaging in the sale of intoxicating liquors, as specified in this act, in the district of Alaska, who is required by it to have a license as herein specified, without first having obtained a license to do so as herein provided, or any person who shall engage in such sale in any portion of the district where the sale thereof is prohibited, upon conviction thereof shall be fined not less than one hundred dollars nor more than two thousand dollars, or be imprisoned for not less than one month nor more than one year; and upon every subsequent conviction of a like offense shall, in addition to the penalty above named, be imprisoned not less than two months nor more than one year."

She waived trial by jury and was tried before the justice pursuant to section 2527, which reads:

"That upon a plea other than a plea of guilty, if the defendant do not then demand a trial by jury, the justice must proceed to try the issue."

Being adjudged guilty, and it being the third conviction for a like offense, petitioner was sentenced to imprisonment in the federal jail for one year and to pay a fine of $1,500.

She now asks to be discharged on writ of habeas corpus on the ground that she was tried without a jury in contravention of the Constitution of the United States, to wit, section 2 of article 3 which provides:

"The trial of all crimes, except in cases of impeachment, shall be by jury"

—as supplemented and enlarged by the Sixth Amendment to said Constitution, viz.:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury," etc.

W. A. Mundy, Asst. Dist. Atty., for the United States.
L. V. Ray, of Seward, for defendant.

BROWN, District Judge.   In Callan v. Wilson, 127 U. S. 540, 8 Sup. Ct. 1301, 32 L. Ed. 223 (a case where the prisoner demanded, but was denied, a jury trial), the court, speaking

by Mr. Justice Harlan, says (127 U. S. at page 555, 8 Sup. Ct. at page 1306 [32 L. Ed. 223]), after citing numerous cases:

"Without further reference to the authorities, and conceding that there is a class of petty or minor offenses, not usually embraced in public criminal statutes, and not of the class or grade triable at common law by a jury, and which, if committed in this District, may, under the authority of Congress, be tried by the court and without a jury, we are of opinion that the offense with which the appellant is charged does not belong to that class. A conspiracy such as is charged against him and his codefendants is by no means a petty or trivial offense. 'The general rule of the common law,' the Supreme Judicial Court of Massachusetts said in Commonwealth v. Hunt, 4 Metc. 111, 121 [38 Am. Dec. 346], 'is that it is a criminal and indictable offense, for two or more to confederate and combine together, by concerted means, to do that which is unlawful or criminal, to the injury of the public, or portions or classes of the community, or even to the rights of an individual.'"

In Schick v. United States, 195 U. S. 65, 24 Sup. Ct. 826, 49 L. Ed. 99, 1 Ann. Cas. 585, the court, speaking by Mr. Justice Brewer, says:

"And it is a well-known fact that in many territories organized by act of Congress the Legislature has authorized the prosecution of petty offenses in the police courts of cities without a jury. But if there be no constitutional or statutory provision or public policy requiring a jury in the trial of petty offenses, upon what ground can it be contended that a defendant therein may not voluntarily waive a jury? Can it be that a defendant can plead guilty of the most serious, even a capital, offense, and thus dispense with all inquiry by a jury, and cannot, when informed against for a petty offense, waive a trial by jury? Article 6 of the Amendments, as we have seen, gives the accused a right to a trial by jury. But the same article gives him the further right 'to be confronted with the witnesses against him' * * * 'and to have the assistance of counsel.' Is it possible that an accused cannot admit and be bound by the admission that a witness not present would testify to certain facts? Can it be that if he does not wish the assistance of counsel, and waives it, the trial is invalid? It seems only necessary to ask these questions to answer them. When there is no constitutional or statutory mandate, and no public policy prohibiting, an accused may waive any privilege which he is given the right to enjoy. Authorities in the state courts are in harmony with this thought. In Commonwealth v. Dailey, 12 Cush. [Mass.] 80, the defendant in a misdemeanor case waived his right to a full panel and consented to be tried by eleven jurors, and this action was sustained by the Supreme Court of Massachusetts. Chief Justice Shaw, delivering the opinion of the court, said (page 83): 'He may waive any matter of form or substance, excepting only what may relate to the jurisdiction of the court.' The

same doctrine was laid down in Murphy v. Commonwealth, 1 Metc. (Ky.) 365, Tyra v. Commonwealth, 2 Metc. (Ky.) 1, and State v. Kaufman, 51 Iowa, 578 [2 N. W. 275, 33 Am. Rep. 148]. In Connelly v. State, 60 Ala. 89 [31 Am. Rep. 34], a statute authorizing the waiver of a jury was sustained. The same rule was made in State v. Worden, 46 Conn. 349 [33 Am. Rep. 27], which was a case of a felony. See, also, People v. Rathbun, 21 Wend. [N. Y.] 509, 542. We are of opinion that the waiver of a jury by the defendants in these cases and the consent to trial by the court was not in conflict with law, and the judgments are therefore affirmed."

In the Schick Case there was no statute (as there is in the case at bar) authorizing the waiver of jury trial, and Mr. Justice Harlan in his long dissenting opinion in that case (195 U. S. at page 81, 24 Sup. Ct. at page 832 [49 L. Ed. 99, 1 Ann. Cas. 585]), says:

"If, in analogy to the powers exercised by the Parliament of England prior to the adoption of our Constitution, it should be held that Congress could treat the particular crime here in question as a petty offense triable by the court, without a jury, or with a jury of less than twelve persons, it is sufficient to say that Congress has not legislated to that effect in respect of the offense charged against these defendants, or of any other offense defined in the acts relating to oleomargarine. If it has the power to do so, Congress has not assumed, directly or indirectly, to withdraw such offenses from the operation of the constitutional provision that the trial of all crimes, except in cases of impeachment, shall be by jury. And the question is whether, in the face of that explicit provision and in the absence of any statute authorizing it to be done, the court, a jury being waived, had jurisdiction to try the accused for the crime charged."

In Belt v. United States, 4 App. D. C. 25, a reference to which is found in 24 Cyc. 151, note 26, it is said:

"The weight of authority seems to be that, in the absence of express statutory authority, no accused person can waive the right of trial by jury in a criminal case; it being maintained that nothing can be waived which is jurisdictional or fundamental, or the observance of which is required by public policy; but if authorized by statute, the right to such trial may be waived."

This case went on appeal to the Supreme Court of the United States and was there affirmed. In re Belt, Petitioner, 159 U. S. 95, 15 Sup. Ct. 987, 40 L. Ed. 88. See, also, Hallinger v. Davis, 146 U. S. 314, 13 Sup. Ct. 105, 36 L. Ed. 986.

A very interesting discussion of this subject is found in the case of State v. Cottrill, 31 W. Va. at page 202, 6 S. E. at page 449, where Snyder, Judge, says:

"The whole history of English and American jurisprudence has been searched in vain to find a single precedent holding a statute unconstitutional which permits the accused in misdemeanor cases to waive a jury."

A later case, State v. Griggs, 34 W. Va. 78, 11 S. E. 740, approves the opinion of Judge Snyder.

The case of Virch v. Bishop, very recently decided by Judge Jennings, of the First division of Alaska (not reported), was one where it seems the accused was charged with the offense of malicious destruction of a fence. Judge Jennings in that case held section 2527, Compiled Laws of Alaska, supra, to be unconstitutional and discharged the petitioner. While reluctant to disagree with so able a jurist, I feel compelled to do so in this case. His decision is based upon the Callan v. Wilson Case, supra, reasoning that the offense charged (malicious breaking of a fence) was not a petty offense under the common law, and that the nature of the offense and the amount of punishment prescribed precludes its being classed as such; the punishment provided being a fine of $500 or imprisonment for one year. The distinction which Judge Jennings draws is that, the "malicious breaking of a fence" being a serious crime under the old common law, it cannot be termed a misdemeanor, no matter what the legislative authority may choose to call it; that felonies are still felonies, though termed misdemeanors by statute. The Circuit Court of Appeals for the Ninth Circuit, in the case of Mustard v. Elwood, 223 Fed. 225, 138 C. C. A. 467, has expressly held, however, that selling intoxicating liquor in violation of section 2581, supra, is a misdemeanor.

What real difference does it make what the common law was in such a case? How long are we to refuse to do the sensible, rational, and practical thing now, for fear of fanciful dangers and difficulties that never happen, or on account of things that happened hundreds of years ago?

The old distinctions of the common law are rapidly disappearing, and so far as they are a clog and hindrance on the practical administration of justice in this country they cannot disappear too fast.

"The law is a progressive science," said the Supreme Court of the United States in Holden v. Hardy, 169 U. S. 385, 18 Sup. Ct. 383, 42 L. Ed. 780.

The statute in question (section 2527, Compiled Laws of Alaska), authorizing the waiving of a jury in misdemeanor cases, has been in operation in Alaska since 1899, and in Oregon, from whence it was taken, since 1864. During all these years innumerable cases have arisen and been disposed of under it, and no reported decision is found where its constitutionality has ever been questioned, until the case of Virch v. Bishop, supra. This long acquiescence alone is entitled to great weight in determining its validity, as well as other well-settled rules of statutory construction.

"Legislative construction of constitutional provisions, adopted and acted on with the acquiescence of the people for many years, is entitled to great weight with the courts, and will not be disturbed, except for manifest error." Stuart v. Laird, 1 Cranch, 299, 2 L. Ed. 115, followed in U. S. v. Midwest Oil Co., 236 U. S. 473, 35 Sup. Ct. 309, 59 L. Ed. 673.

"An act of Congress will not be declared void, except in a clear case. Every possible presumption is in favor of the validity of the statute, and this continues until the contrary is shown beyond a rational doubt." Sinking Fund Case, 99 U. S. 718, 25 L. Ed. 496.

It is well known that in the immense and sparsely settled regions of Alaska it is often difficult and expensive to procure a jury of twelve men in courts of justices of the peace, in isolated places; and those charged with offenses often prefer to waive trial by jury rather than submit to the delay incident to procuring a jury. Again, this waiver may, and often does, operate to the advantage of an accused, in that he may avoid the taxing of the costs of the jury against him in case of a verdict of guilty.

In 8 Cyc. p. 733, it is said:

"A construction which must necessarily work great public and private mischief must never be preferred to a construction which will work neither, or neither in so great a degree, unless the terms absolutely require such a preference."

"In all such causes of construction, it should be borne in mind that broad questions of expediency and sound public policy are not to be overlooked."

While a statute manifestly unconstitutional will not be upheld, on the ground either of long acquiescence or of expediency and public policy, these considerations are still entitled to weight.

What is there in the contemptible business of "peddling" or "bootlegging" whisky to remove it from the class of petty offenses? For a first offense, under section 2581, supra, the minimum penalty is a fine of $100. Ordinarily this would be sufficient punishment for a first offense, with the hope of the reformation of the offender. But why should one, taking advantage of his own wrongdoing, after willfully and recklessly defying the law, on conviction a third time, be shielded within the sanctuary of the Constitution? In all police courts habitual and incorrigible offenders are summarily sentenced to such long terms in jail as the exigencies of the case and the character of the prisoner require. Why should unlawful pandering to vicious and depraved appetites be dignified and raised to a higher degree of crime than that alleged against the victim and consumer, when later charged with being "drunk and disorderly"? Echo answers, "Why?"

The power of Congress to make regulations for controlling the liquor traffic in the territories has never been questioned.

"The police power is an attribute of sovereignty, possessed by every sovereign state, and is a necessary attribute of every civilized government. It is inherent in the states of the American Union, and is not a grant derived from or under any written Constitution." 6 Ruling Case Law, § 182.

The determination of this case requires the exercise of "practical common sense," the "rule of reason," freed from the trammels of the old common-law distinctions between the degrees of crimes as characterized hundreds of years ago under vastly different conditions.

The petitioner here is a persistent and willful offender, showing an utter contempt for the law and for decency and public morale. She had been twice convicted of a like offense. She was offered the right of a jury trial, and refused it. She had a fair trial, and now suffers a just punishment. To order her discharge on questions of refined and subtle distinctions would be a parody on justice, and result only in jubilation on the part of every crook and bootlegger in the country, who would thereby find a renewed reason for defying the law with impunity.

An observation made by that great lawyer, Mr. Elihu Root, on the occasion of the American Bar Association meeting, October 20, 1914, may be of interest:

"The special class to which is committed the guardianship of the law always drifts away in time from the standards of the plain people whom they serve, always becomes subtle, technical, over-refined, and the forms which they originally adopted to facilitate the process of getting at substantial justice come to be themselves the subject of controversy which obstructs the way of justice."

Fortunately the spirit of enlightenment and liberal reason is abroad in our land, and a recent decision of the Supreme Court of the United States does much to clear away that mist of over-refinement and subtlety which has so often thwarted and defeated justice. Mr. Justice Day, in the case of Garland v. Washington, 232 U. S. at page 646, 34 Sup. Ct. at page 457 (58 L. Ed. 772), says:

"Technical, objections of this character were undoubtedly given much more weight formerly than they are now. Such rulings originated in that period of English history when the accused was entitled to few rights in the presentation of his defense, when he could not be represented by counsel, nor heard upon his own oath, and when the punishment of offenses, even of a trivial character, was of a severe and often of a shocking nature. Under that system the courts were disposed to require that the technical forms and methods of procedure should be fully complied with. But with improved methods of procedure and greater privileges to the accused, any reason for such strict adherence to the mere formalities of trial would seem to have passed away, and we think that the better opinion, when applied to a situation such as now confronts us, was expressed in the dissenting opinion of Mr. Justice Peckham, speaking for the minority of the court in the Crain Case."

This case overrules Crain v. United States, 162 U. S. 625, 16 Sup. Ct. 952, 40 L. Ed. 1097, on the ground that the want of a formal arraignment did not deprive the accused of any substantial right and "that the right sustained in a former case involving criminal procedure is no longer required for the protection of the accused."

Thus are we finding, indeed, that the law is "a progressive science, making for the surer protection of the innocent, and the swifter and more certain punishment of the guilty."

The other questions raised by counsel for the petitioner, as to the character of the offense, amount of punishment, and excessive bail, are disposed of by the case of Mustard v. Elwood, supra, and, for the reason that the court may reduce the bail in proper cases, the petition will have to be denied.