## HALLINGER v. DAVIS.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF NEW JERSEY.

No. 1100. Submitted November 7, 1892. — Decided November 28, 1892.

A state statute, conferring upon one charged with crime the right to waive a trial by jury and to elect to be tried by the court, and conferring power upon the court to try the accused in such case, is not in conflict with the Constitution of the United States.

When a prisoner, charged with the crime of murder committed in a State, pleads guilty, the proper court of the State may, if its laws permit, proceed to inquire on evidence, without the intervention of a jury, in what degree of murder the accused is guilty, and may find him to be guilty of murder in the first degree, and may thereupon sentence him to death, without thereby violating the provision in the Fourteenth Amendment to the Constitution of the United States that no State shall "deprive any person of life, liberty or property without due process of law."

THIS was a petition to the Circuit Court for a writ of *habeas corpus*. The facts were stated by this court as follows:

On the 30th day of May, A.D. 1892, the appellant, Edward W. Hallinger, presented a petition to the Circuit Court of the United States for the District of New Jersey, wherein, and in a copy of the record of the proceedings in the Court of Oyer

and Terminer and General Jail Delivery of the county of Hudson, State of New Jersey, attached to said petition as part thereof, the following facts appeared:

Hallinger, the appellant, was on the 14th day of April, 1891, indicted by the grand jury of Hudson County, for the murder of one Mary Hallinger. On the 14th day of April, 1891, he pleaded guilty, whereupon the court ordered the said plea of guilty to be held in abeyance subject to said defendant's consultation with counsel, then assigned for the purpose of consultation concerning said plea. On the 17th day of April, A.D. 1891, the defendant and his counsel again appeared and insisted on said plea of guilty; whereupon the said court continued said assignment of counsel, and ordered said defendant to be present on Tuesday, April 28, 1891, at an examination to determine the degree of guilt under said plea to be then and there had by said court. On the 28th day of April, 1891, the court composed of Knapp and Lippincott, justices, in the presence of the defendant and his counsel, heard evidence concerning the degree of defendant's guilt, and on the 12th day of May, 1891, the court adjudged the defendant guilty of murder in the first degree, and committed him to the custody of the jailor of Hudson County to be confined in the common jail of said county until Tuesday, the 30th day of June, A.D. 1891, on which day he was condemned to be hanged.

Article I, section 7, of the constitution of the State of New Jersey provides: " The right of a trial by jury shall remain inviolate, but the legislature may authorize the trial of civil suits, when the matter in dispute does not exceed fifty dollars, by a jury of six men." Section 68 of the Criminal Procedure Act of the State of New Jersey provides: " All murder which shall be perpetrated by means of poison or by lying in wait, or by any other kind of wilful, deliberate, and premeditated killing, or which shall be committed in perpetrating or in attempting to perpetrate any arson, rape, sodomy, robbery, or burglary, shall be deemed murder in the first degree; and all other kinds of murder shall be deemed murder of the second degree; and the jury, before whom any person indicted for murder shall be tried, shall, if they find such person guilty

thereof, designate by their verdict whether it be murder of the first or second degree ; but if such person shall be convicted on confession in open court, the court shall proceed by examination of witnesses to determine the degree of the crime and give sentence accordingly." In his said petition the defendant alleged that said section 68 of the Criminal Procedure Act of New Jersey is in violation of the Constitution of the United States and of the State of New Jersey, and that his sentence and detention are illegal. He also stated that, by virtue of the statutes and laws of the State of New Jersey, no right of appeal in murder cases existed, and he had no right to appeal to any higher court in the State to review or annul said illegal judgment and sentence.

On the 30th day of May, 1892, this application for a writ of *habeas corpus* was by the Circuit Court of the United States for the District of New Jersey refused; from which judgment this appeal was taken.

*Mr. B. F. Rice* for appellant.

The defendant cannot waive his constitutional rights in so material a point as trial by jury. If he could he could only do so directly, and not by implication.

A plea of guilty is not a waiver of a right to a trial by jury. The most that can be said of it is that it dispenses with such trial. But a plea of guilty to a crime that has degrees does not dispense with the necessity for a jury trial to ascertain the degree. The plea of guilty has never been held to apply to the first degree, or any other, unless the defendant designates the degree to which his plea applied.

In case the statute had provided that the jury before whom the defendant was tried should, if they found him guilty, say so and no more, and that thereupon the court should upon the evidence given before the jury, designate whether it be murder in the first or second degree, would that be giving the defendant a trial by a jury ? To make it a trial by jury every material fact in the case must be decided by the jury, and it is a very material fact that settles the degree of the crime.

Now, if such a statute as is above described would not be constitutional because it did not provide for a trial by jury, wherein is the statute that allows the court to designate the degree of the crime upon a plea of guilty in any better attitude?

The plea of guilty is no stronger than a verdict of guilty.

Hence so much of the statute of New Jersey as provides that the judges may designate the degree in case of confession is unconstitutional and void, and the appellant in this case has been sentenced upon a state of facts found by the court which were not confessed by the appellant or passed on by a jury. *Wartner* v. *State*, 102 Indiana, 51; *Lemons* v. *State*, 4 W. Va. 755; *Williams* v. *State*, 12 Ohio St. 622; *State* v. *Holt*, 90 N. Car. 749; *Giles* v. *State*, 23 Texas App. 281; *Robbins* v. *State*, 8 Ohio St. 131; *Cancemi* v. *People*, 18 N. Y. 128.

The defendant is without remedy in the courts of the State where he was tried.

The statute gives the defendant in a capital case no right of appeal, and in case of confession no appeal, (apparently,) at all, certainly not that will stay execution.

We respectfully submit that the appellant is held without due process of law and ought to be discharged.

*Mr. C. H. Winfield* for appellee.

Mr. JUSTICE SHIRAS, after stating the case, delivered the opinion of the court.

It is contended on behalf of the appellant that the judgment and sentence of the Court of Oyer and Terminer of Hudson County, New Jersey, whereby he is deprived of his liberty and condemned to be hanged, are void, because the Act of Criminal Procedure of the State of New Jersey, in pursuance of the provisions of which such judgment and sentence were rendered, is repugnant to the Fourteenth Amendment of the Constitution of the United States, which is in these words: "Nor shall any State deprive any person of life, liberty or property without due process of law." Such repugnancy is supposed to be found in the proposition that a verdict by a

jury is an essential part in prosecutions for felonies, without which the accused cannot be said to have been condemned by "due process of law;" and that any act of a state legislature providing for the trial of felonies otherwise than by a common law jury, composed of twelve men, would be unconstitutional and void.

Upon the question of the right of one charged with crime to waive a trial by jury, and elect to be tried by the court, when there is a positive legislative enactment, giving the right so to do, and conferring power on the court to try the accused in such a case, there are numerous decisions by state courts, upholding the validity of such proceeding. *Dailey* v. *The State*, 4 Ohio St. 57; *Dillingham* v. *The State*, 5 Ohio St. 280; *People* v. *Noll*, 20 California, 164; *State* v. *Worden*, 46 Connecticut, 349; *State* v. *Albee*, 61 N. H. 423, 428.

If a recorded confession of every material averment of an indictment puts the confessor upon the country, the institution of jury trial and the legal effect and nature of a plea of guilty have been very imperfectly understood, not only by the authors of the Constitution and their successors down to the present time, but also by all the generations of men who have lived under the common law. It is only necessary, in order to determine whether the legislature transcended its power in the act, to inquire whether it is prohibited by the Constitution. The right of the accused to a trial was not affected, and we can, therefore, have no doubt that the proceeding to ascertain the degree of the crime where, in an indictment for murder, the defendant enters a plea of guilty, is constitutional and valid. Statutes of like or similar import have been enacted in many of the States, and have never been held unconstitutional. On the other hand, they have been repeatedly and uniformly held to be constitutional.

In Ohio the statute is: "If the offence charged is murder and the accused be convicted by confession in open court, the court shall examine the witnesses and determine the degree of the crime, and pronounce sentence accordingly." In *Dailey* v. *The State*, 4 Ohio St. 57, the statute was held to be constitutional and a sentence thereunder valid.

·The statute of California in relation to this subject is in the identical language of the statute of New Jersey. In *People* v. *Noll*, 20 California, 164, the defendant on arraignment pleaded guilty. Thereupon witnesses were examined to ascertain the degree of the crime. The court found it to be murder in the first degree and sentenced him accordingly. One of the errors assigned was that, after the plea of guilty by the defendant, the court did not call a jury to hear evidence and determine the degree of guilt. The Supreme Court held : " The proceeding to determine the degree of the crime of murder after a plea of guilty is not a trial. No issue was joined upon which there could be a trial. There is no provision of the Constitution which prevents a defendant from pleading guilty to the indictment instead of having a trial by jury. If he elects to plead guilty to the indictment, the provision of the statute for determining the degree of the guilt, for the purpose of fixing the punishment, does not deprive him of any right of trial by jury."

In Connecticut, the act of 1874 provided that in all prosecutions the party accused, if he should so elect, might be tried by the court instead of by the jury, and that, in such cases, the court should have full power to try the case and render judgment. In *The State* v. *Worden*, 46 Connecticut, 349, this statute was held not to conflict with the provisions of the state constitution, that every person accused "shall have a speedy trial by an impartial jury, and that the right of trial by jury shall remain inviolate."

And, of course, the decision in the present case, of the highest court of the State of New Jersey having jurisdiction, that the statute is constitutional and valid, sufficiently and finally establishes that proposition, unless the proceedings in the case did not constitute "due process of law" within the meaning of the Fourteenth Amendment to the Constitution of the United States.

That phrase is found in both the Fifth and the Fourteenth Amendments. In the Fifth Amendment the provision is only a limitation of the power of the general government; it has no application to the legislation of the several States. *Barron*

v. *Baltimore,* 7 Pet. 243. But in the Fourteenth Amendment the provision is extended in terms to the States. The decisions already cited sufficiently show that the state courts hold that trials had under the provisions of statutes authorizing persons accused of felonies to waive a jury trial, and to submit the degree of their guilt to the determination of the courts, are "due process of law." While these decisions are not conclusive upon this court, yet they are entitled to our respectful consideration.

The meaning and effect of this clause have already received the frequent attention of this court. In *Murray* v. *Hoboken Land and Improvement Co.,* 18 How. 272, the historical and critical meaning of these words was examined. The question involved was the validity of an act of Congress giving a summary remedy, by a distress warrant, against the property of an official defaulter. It was contended that such a proceeding was an infringement of the Fifth Amendment, but this court held that, "tested by the common and statute law of England prior to the emigration of our ancestors, and by the laws of many of the States at the time of the adoption of this Amendment, the proceedings authorized by the act of Congress cannot be denied to be due process of law."

In *Walker* v. *Sauvinet,* 92 U. S. 90, it was held that a trial by jury in suits at common law, pending in the state courts, is not a privilege or immunity of national citizenship which the States are forbidden by the Fourteenth Amendment of the Constitution of the United States to abridge. The court, by Waite, C. J., said: "A State cannot deprive a person of his property without due process of law; but this does not necessarily imply that all trials in the state courts affecting the property of persons must be by jury. This requirement of the Constitution is met if the trial is had according to the settled course of judicial proceedings. Due process of law is process due according to the law of the land. This process in the States is regulated by the law of the State."

In *Davidson* v. *New Orleans,* 96 U. S. 97, an assessment of certain real estate in New Orleans for draining the swamps of that city was resisted, and brought into this court by a writ

of error to the Supreme Court of the State of Louisiana. In the opinion of the court, delivered by Mr. Justice Miller, will be found an elaborate discussion of this provision as found in Magna Charta and in the Fifth and Fourteenth Amendments o the Constitution of the United States. The conclusion reached by the court was that "it is not possible to hold that a party has, without due process of law, been deprived of his property, when, as regards the issues affecting it, he has, by the laws of the State, a fair trial in a court of justice, according to the modes of proceeding applicable to such a case." Mr. Justice Bradley, while concurring in the judgment and in the general tenor of the reasoning by which it was supported, criticised the language of the court as "narrowing the scope of inquiry as to what is due process of law more than it should do."

However, in the very next case in which the court had occasion to consider the provision in question, Mr. Justice Bradley was himself the organ of the court in declaring that "there is nothing in the Constitution to prevent any State from adopting any system of laws or judicature it sees fit for all or any part of its territory. If the State of New York, for example, should see fit to adopt the civil law and its method of procedure for New York City and the surrounding counties, and the common law and its method of procedure for the rest of the State, there is nothing in the Constitution of the United States to prevent its doing so. This would not, of itself, within the meaning of the Fourteenth Amendment, be a denial to any person of the equal protection of the laws. If every person residing or being in either portion of the State should be accorded the equal protection of the laws prevailing there, he could not justly complain of a violation of the clause referred to. For, as before said, it has respect to persons and classes of persons. It means that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in the same place and under like circumstances. The Fourteenth Amendment does not profess to secure to all persons in the United States the benefit of the same laws and the same remedies. Great diversities in these respects may exist in two States

separated only by an imaginary line. *On one side of this line there may be a right of trial by jury, and on the other side no such right. Each State prescribes its own modes of judicial proceedings. . . .* Where part of a State is thickly settled, and another part has but few inhabitants, it may be desirable to have different systems of judicature for the two portions — trial by jury in one, for example, and not in the other. . . . It would be an unfortunate restriction of the powers of the state government if it could not, in its discretion, provide for these various exigencies." *Missouri* v. *Lewis,* 101 U. S. 51, 52.

In *Ex parte Wall,* 107 U. S. 265, it was held that a proceeding, whereby an attorney at law was stricken from the roll for contempt, was within the jurisdiction of the court of which he was a member, and was not an invasion of the constitutional provision that no person shall be deprived of life, liberty or property without due process of law, but that the proceeding itself was due process of law. The dissent of Mr. Justice Field in that case did not impugn the view of the court as to what constituted due process of law, but was put upon the proposition that an attorney at law cannot be summarily disbarred for an indictable offence not connected with his professional conduct.

One of the latest and most carefully considered expressions of this court is found in the case of *Hurtado* v. *California,* 110 U. S. 516, 534. The question in the case was the validity of a provision in the constitution of the State of California, authorizing prosecutions for felonies by information, after examination and commitment by a magistrate, without indictment by a grand jury.

In pursuance of that provision and of legislation in accordance with it, Hurtado was charged in an information with the crime of murder, and, without any investigation of the cause by a grand jury, was tried, found guilty and condemned to death. From this judgment an appeal was taken to the Supreme Court of California, which affirmed the judgment. This court, in reviewing and affirming the judgment of the Supreme Court of California, said: "We are to construe this phrase — due process of law — in the Fourteenth Amendment

by the *usus loquendi* of the Constitution itself. The same words are contained in the Fifth Amendment. That article makes specific and express provision for perpetuating the institution of the grand jury, so far as relates to prosecutions for the more aggravated crimes under the laws of the United States. It declares that 'no person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a grand jury, . . . . nor be deprived of life, liberty or property without due process of law.'

"According to a recognized canon of interpretation, especially applicable to formal and solemn instruments of constitutional law, we are forbidden to assume, without clear reason to the contrary, that any part of this most important amendment is superfluous. The natural and obvious inference is, that in the sense of the Constitution, 'due process of law' was not meant or intended to include, *ex vi termini*, the institution and procedure of a grand jury in any case. The conclusion is equally irresistible, that when the same phrase was employed in the Fourteenth Amendment to restrain the action of the States, it was used in the same sense and with no greater extent ; and that if in the adoption of that Amendment it had been part of its purpose to perpetuate the institution of the grand jury in all the States, it would have embodied, as did the Fifth Amendment, express declarations to that effect. Due process of law in the latter refers to that law of the land which derives its authority from the legislative powers conferred upon Congress by the Constitution of the United States, exercised within the limits therein prescribed, and interpreted according to the principles of the common law. In the Fourteenth Amendment, by parity of reason, it refers to the law of the land in each State, which derives its authority from the inherent and reserved powers of the State, exerted within the limits of those fundamental principles of liberty and justice which lie at the base of all our civil and political institutions, and the greatest security for which resides in the right of the people to make their own laws and alter them at their pleasure." The passage from the opinion of Justice Bradley in *Missouri* v. *Lewis*, above cited, is then quoted with approval.

In the *Case of Kemmler*, reported in 136 U. S. 436, 449, a fruitless effort was made to induce this court to hold that a statute of the State of New York, providing that punishment of death should be inflicted by an electrical apparatus, was void under the Fourteenth Amendment, and it was said: "The enactment of this statute was in itself within the legitimate sphere of the legislative power of the State, and in the observance of those general rules prescribed by our systems of jurisprudence; and the legislature of the State of New York determined that it did not inflict cruel and unusual punishment, and its courts have sustained that determination. We cannot perceive that the State has thereby abridged the privileges or immunities of the petitioner, or deprived him of due process of law."

Applying the principles of these decisions to the case before us, we are readily brought to the conclusion that the appellant, in voluntarily availing himself of the provisions of the statute and electing to plead guilty, was deprived of no right or privilege within the protection of the Fourteenth Amendment. The trial seems to have been conducted in strict accordance with the forms prescribed by the constitution and laws of the State, and with special regard to the rights of the accused thereunder. The court refrained from at once accepting his plea of guilty, assigned him counsel, and twice adjourned, for a period of several days, in order that he might be fully advised of the truth, force and effect of his plea of guilty. Whatever may be thought of the wisdom of departing, in capital cases, from time-honored procedure, there is certainly nothing in the present record to enable this court to perceive that the rights of the appellant, so far as the laws and Constitution of the United States are concerned, have been in anywise infringed.

Other propositions are discussed in the brief of the appellant's counsel, but they are either without legal foundation or suggest questions that are not subject to our revision.

The judgment of the Circuit Court is                    *Affirmed.*

JUSTICE HARLAN assents to the conclusion, but does not agree in all the reasoning of the opinion.