### STATE v GARDNER

*Ohio Appeals*, 2nd Dist, Franklin Co

No 2746. Decided May 5, 1937

Ralph J. Bartlett, Prosecuting Attorney, Columbus, for plaintiff-appellee.

John M. Lewis, Columbus, and Hamilton, Kramer & Wiles (Mr. Kramer), Columbus, for defendant-appellant.

## OPINION

By HORNBECK, J.

Defendant was indicted for the murder of Arch B. Coyner while in the perpetration of a robbery. A plea of not guilty was entered, a special venire of jurymen drawn, and after the members of the panel were in the court room preparatory to the selection of a jury the defendant, after indicating a purpose to waive a jury trial, was fully apprised of his rights by the presiding judge. The waiver of a jury trial in writing was taken according to the statute, §13442-4, GC, and thereupon three of the judges of the Common Pleas Court, chosen as provided by the section, tried the defendant, who again entered a plea of not guilty generally and the further plea of not guilty by reason of insanity. After trial had the court found the defendant guilty of murder as charged in the indictment without recommendation of mercy.

Motions for new trial were duly filed, consisting of eleven branches, requesting the court to state in writing the conclusions of fact arrived at on the record separately from the conclusions of law and in arrest of judgment on the ground and for the reason that the facts stated in the indictment do not constitute an offense. After overruling all of these motions the court pronounced a sentence of death upon the defendant. From the judgment of the trial court an appeal on questions of law is prosecuted.

The brief of the appellant assigns the following five grounds of error:

(1) That the record of the proceedings in the court below does not show a specific intent to commit the crime charged.

(2) That the defendant below, by reason of intoxication both by liquor and marajuana cigarettes and his mental and physical condition was incapable of forming such intent.

(3) That the court below erred in its rejection of the opinions of the experts.

(4) That the defendant below was not tried by a jury of his peers as required by the Constitution of the State of Ohio.

(5) That the trial court erred in refusing the defendant's request for the court to state in writing the conclusions of fact found separately from the conclusions of law.

On the night of January 25, 1935, at about 10:45, the defendant in his work clothes and with a cap pulled well down over his head, walked into the Seneca Hotel, probably from Grant Avenue, approached the desk, behind which stood Mr Coyner, the clerk. Defendant pulled a revolver out of his right hip pocket, ordered Mr. Coyner to give him the money from the cash drawer, with which request Mr. Coyner immediately complied. Defendant took the money, and as Mr. Coyner turned around with his hands behind him, defendant shot him on the left side in the region of the heart, from the effects of which shot he soon died. Defendant then left the hotel. As he was doing so he menaced several people who were in the lobby with his gun, walked from the hotel into a nearby street, threw the gun away, went to a drug store, had a coca-cola, then to a saloon where he drank some beer, purchased three bottles, took an owl car to his room, which was in the residence of a Mr. Carper. Mr. and Mrs. Carper and defendant drank the beer. Defendant went to bed about three o'clock in the morning. Either in the morning before retiring or after he awakened from his sleep he hid the proceeds of the robbery, $61.00, in or about the stove in the home of Mr. Carper. A few days thereafter he left Columbus, Mr. Carper taking him to Dayton. Later he returned to Columbus for a short time, then went to Huntington, West Virginia, where he was employed and finally to Jacksonville, Florida, where he was apprehended. He made a confession there to officers of the police force of Columbus who went down to return him to Columbus and later, upon his return, made a second confession. Harry Carson, Chief of Detectives, testified to

the statements by way of confession made by the defendant on August 24, 1936, in police headquarters, Columbus, Ohio.

In his confessions the defendant said that he was drunk on the night of the killing and that he had been drinking heavily all that day, although there was no mention made at any time, either in his confession in Florida or in Columbus, that he was under any influence other than that of alcohol. He stated in his confessions that he did not purpose to shoot Mr. Coyner but meant to miss him and shot with the intention of frightening him, although he said that he shot because he thought as Mr. Coyner had put his hands behind him, that he meant to press a signal bell.

The defense claimed that defendant was addicted to the use of marajuana, which · he smoked both in the form of cigarettes and as powder in a pipe; that he began to smoke in Chicago in 1931 and that he used it until he came to Columbus and that he continued to smoke during his residence there; that on the day of the killing he had smoked a half dozen cigarettes during the afternoon and evening; that he had taken some liquor and that he was drunk with marajuana and liquor when he committed the homicide; that Mr. Coyner looked to be far away from defendant and very small, caused by the effects of his drunken condition; that he had no purpose or intent to kill Coyner and that he had not the mental capacity to form a purpose to kill, a requisite under the indictment.

There was considerable testimony as to the unusual appearance of the defendant on the night of the killing, both before and after its commission. One witness said that his eyes rolled noticeably; another that they stood out very prominently; that he was in an excited and abnormal state of mind.

Instances of unusual conduct on his part appear in the record. A Mr. Browning, a school teacher from Chicago, who seemed to be a reputable witness, testified that the defendant was addicted to the use of marajuana; that on one occasion he had attacked him, Mr. Browning. Two young women testified to an occasion when they had visited the defendant in Chicago. He had taken them on a trip to see the night life of the city and suddenly snatched a five dollar bill from the pocketbook of one of the young women, took the keys from their automobile, left for a couple of hours, returned and on the way to his room instructed Miss Drake, who was driving, to speed up and to turn suddenly to the right. She complied with the instructions and then came to a sudden stop and discovered that if they had not so stopped they would have been precipitated into a lake. Mrs. Eck, with whom the defendant had roomed, also told of peculiar conduct on the part of defendant, of abuse and cursing which he had directed to her. Miss Edwards, one of the young women who had gone to Chicago to visit the defendant, told of his return to her home when an altercation took place wherein he threw a plate at her head, narrowly missing her.

Most of these occurrences were attributed by those who testified to drunkenness produced by alcohol and all of them could be explained upon this assumption.

The defendant insisted that he did not recall all that had occurred on the night of the killing, denied some parts of his confession, but in the main told the same story on the witness stand as he did in both of his confessions.

Two alienists testified, Dr. George T. Harding and Dr. Robert C. Tarbell. Neither would say that the defendant was legally insane. Dr. Harding's testimony probably will bear the interpretation that in his judgment the defendant did not have the mental capacity at the time of the homicide to form a purpose to kill. It is doubtful if Dr. Tarbell's testimony will bear such interpretation.

There was some evidence tending to show that the police officers had promised if the defendant would tell the truth that thy would do what they could for him. This was urged as invalidating the confession upon the ground that it was involuntarily secured.

The trial court, Judge Scarlett announcing the opinion, found that the confession was voluntarily made; that the State had established all the elements of the offense charged, including a purpose to kill, by the requisite degree of proof; that the defendant had not sustained the defense of insanity. **Turk v State, 48 Oh Ap 489 (17 Abs 522).** The determination that the defendant had mental capacity to form the purpose to kill is challenged by the first assignment of error in the brief of the appellant.

Upon an examination of the question we are satisfied that the court was well within its prerogative in holding that it appeared from the evidence that the defendant at the time of the shooting had the mental ability to form a purpose to kill. The

court had a right, within discretionary limits, to accept so much of the factual proof as appeared to the members thereof to be reasonable. So doing, they disregarded the opinions of the experts as to the mental incapacity of the defendant because the opinions were grounded solely upon hypothetical question, certain hypothesis of which were not sustained by the evidence. If any material supposition in the hypothetical question or questions upon which the experts based their answers was not proven, then the answer was not effective. There were several material propositions in the questions which the court had a right to say were not supported by the evidence. The experts expressed no opinions based only upon their examinations of the defendant, which would support the conclusion that he had not the capacity to form a purpose to kill.

It is noteworthy that the defendant did not, in either of his confessions, make any mention of a disturbed mental state at the time of the killing because of the use of marajuana. If the use of marajuana affected the defendant at the time of the killing to the extent that he testified, it is inconceivable that he should not have mentioned it in any of his conversations with the police officers. The experts did not testify to any peculiarities in physical appearance which would be manifested by and follow the use of marajuana. Thus the peculiarities in the appearance of the defendant respecting the rolling of his eyes and their prominence need not, under the evidence, be attributed to the use of marajuana.

The court had the right to find that the movements of the defendant as he entered the Seneca Hotel were normal. A disinterested witness said that he came in and moved slowly; that he was calm. He approached the desk, directed Mr. Coyner to turn over the money as would be expected of a rational person staging a hold-up. He was approximately three feet from Mr. Coyner and had his revolver at his finger tips, resting upon the clerk's desk. When Mr. Coyner turned about with his hands back of him the defendant acted as a normal person would act, who was in fear that Mr. Coyner might give a signal of what was happening and he was shot by the defendant to prevent that occurrence. Although the defendant says that he shot with the intention of missing Mr. Coyner, the bullet lodged very close to the heart and gave every appearance of careful and deliberate aim. As the defendant left the hotel he acted as a desperado who was deliberately staging a hold-up, menaced those in the lobby of the hotel and left the building. Thereafter, he undertook to hide the evidence of his crime by throwing the revolver away. He secreted the proceeds of the robbery by hiding it in a stove. As the occurrences were narrated in his confession his conduct after he left the Mack bar room indicated the course outlined by a rational mind bent on mischief. He went to the Otis Elevator (or to his room as stated by him on the witness stand), secured the revolver, loaded it for the purpose of going out to get some money, and started forth. As he passed the Seneca Hotel he decided to try the lobby there. We have already stated what followed. The account which the defendant gives of the shooting and his statement that he shot to miss indicates that under the most favorable viewpoint of his testimony he was using the processes of reason at the moment that he shot. If he had no appreciation of what he was doing and no capacity to form intent, by the same test he would not have had the ability to form a purpose to shoot to miss Mr. Coyner.

Under these circumstances and many others which the record affords, the court very properly under the evidence concluded that under the facts stated in the defendant's confession everything indicated purposeful action on his part and that he was guilty as charged and that the claim of insanity and inability to appreciate the consequences of his act was an afterthought.

The reasons supporting our conclusion that the first assignment of error is not sustained also dispose of the second and third grounds of error.

The fourth assignment of error is that the defendant was not tried by a jury of his peers as required by the Constitution of the State of Ohio.

We have before indicated that the defendant, after being fully informed of all of his rights, elected in writing to be tried by a court of judges and waived his right to a trial by a jury, to which he was entitled. This procedure is authorized by §13442-4, GC. But it is urged that the provisions of this statute contravene §5, Article I, and §10, Article I, of the Constitution of Ohio. In State v Smith, 123 Oh St 237, the court had under consideration §§13442-4 and 13442-5, GC, as then effective, 113 O.L. 179. §13442-4 GC was iden-

tical with that section at the present time and §13442-5 GC only differed in that after waiver the defendant was tried to but one judge instead of by three judges when the penalty on conviction may be death as now required under §13442-5 GC, 113 O.L. 531.

The fifth syllabus of the cited case reads:

"Secs 13442-4 and 13442-5, GC, giving the accused the right to waive a jury and an option to be tried by the court, do not violate any of the provisions of the Ohio Constitution."

It is true that the court's attention was not drawn to the rights of the defendant had he been tried and sentenced by a judge after waiver, but at page 248 of the opinion the court cites Dillingham v State, 5 Oh St 280; Hallinger v Davis, 146 U. S. 314; In Re Belt, 159 U. S. 95; State ex Warner v Baer, 103 Oh St 585, all of which are to effect that the constitutional right of trial by jury is not infringed when the option is specifically given by statute to the accused to have the issue tried by the court or a jury, and he submits his cause to the court.

Inasmuch as the court affirmed the judgment of the Court of Appeals reversing the action of the Common Pleas Court in refusing to accept the waiver of a jury trial by Smith in the case of State v Smith, supra. it follows that the court must have considered the rights of a defendant under §13442-4, GC, et seq., from the constitutional viewpoint, in the event that the case went to retrial and judgment and sentence after the waiver of a jury. It would have been a vain and useless thing to send the case back for re-trial if the court had any doubt as to the constitutionality of the sections from the standpoint of the defendant.

The fifth assignment of error is that the trial court erred in refusing the defendant's request for the court to state in writing the conclusions of fact found separately from the conclusions of law. The section requiring the court, upon the request of one of the parties, to state in writing its conclusions of fact found separately from the conclusions of law is §11421-2, GC. The trial court held that this section had no application to criminal procedure, relating exclusively to civil cases tried in the absence of a jury. We are satisfied that this determination was the correct one.

This section in its present form has been in our statutes since 1854, 51 Ohio Law 57. It is now and always has been carried under the general classification of Part Third, Remedial, of our statutes and is found under Chapter 2, heading "Conduct of the Trial," Division 3, Title 4, "Procedure in Common Pleas Court," and relates only to procedure in trial of civil causes. The procedure in civil cases and criminal cases is different, the order of procedure in criminal cases being found under Part 4, Penal, Title 2, Chapter 21 of the Code. There are so many differences in the proceedings of civil and criminal cases as set out in the Code that we could not profitably take the time to cite them. §11421-2, GC, is to be read in connection with §11421-1, GC, providing for waiver of jury in civil cases. At the time that Revised Statutes §5205, now §11421-2, GC, was enacted, there was no provision whereby a defendant in a criminal case could be tried to a judge or court of judges in the absence of a jury. Until special statutory provision was enacted permitting the defendant to waive trial by jury, the defendant could not waive a jury trial and consent to be tried by the court. Hirn v State, 1 Oh St 15.

Inasmuch then as at no time prior to the enactment of §§13442-4 and 13442-5 GC was it contemplated that a judge or judges should try the facts in criminal cases, the section, §11421-2, GC, requiring separate findings of fact and conclusions of law upon trial had to the court only, could have been intended only to apply to civil trials. Although there has been a change in legislative attitude respecting the right to try a defendant in a criminal case in the absence of a jury, there has been no enactment indicating a purpose to extend the provisions of §11421-2, GC, to criminal cases. Much could be said for the propriety of such legislation. However, this is not for the courts but for the lawmaking bodies.

In Shaw v State, 11 Oh Ap 486, the court had under consideration §11420-1, GC, subdivision (5), providing for the giving of germane special written instructions before argument at the request of either party and it was there held that the section had application to civil cases only. The section there under consideration is in the same chapter as §11421-2, GC.

A careful examination of this record is convincing that no assignment of error is well made and that none has intervened

in the trial of this cause to the prejudice of the defendant.

The judgment will, therefore, be affirmed.

BARNES, PJ, and GEIGER, J, concur.