**M. H. BELL and Bettie Lou Bell,**
**Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 17181.**

United States Court of Appeals
Eighth Circuit.

Aug. 12, 1963.

954

Jerry T. Light, Little Rock, Ark., for petitioners.

Ralph A. Muoio, Atty., Dept. of Justice, Washington, D. C., for respondent, and Louis F. Oberdorfer, Asst. Atty. Gen., and Lee A. Jackson, Morton K. Rothschild, Washington, D. C., were with him on the brief.

Before VOGEL, VAN OOSTERHOUT and RIDGE, Circuit Judges.

VOGEL, Circuit Judge.

The petitioners, who are husband and wife, brought this suit in the Tax Court for redetermination of an alleged deficiency in their income tax for the year 1952 in the amount of $1,929.02. Petitioners seek to deduct as a business expense certain attorney's fees paid in the taxable year of 1952.

Petitioner Marion H. Bell, the husband, was and is a certified public accountant. During the taxable year in question he was practicing at Fort Smith, Arkansas. In late 1951 he was notified by the Internal Revenue Service that his tax returns for the years 1945 through 1949 were being examined and that a criminal prosecution for willful tax evasion was being considered. Mr. Bell, who will be referred to hereinafter as the petitioner, thereupon consulted Mr. Pat Mehaffy of the firm of Mehaffy, Smith and Williams of Little Rock, Arkansas. Upon the suggestion of Mr. Mehaffy, Mr. James Clendening, of Fort Smith, Arkansas, where the petitioner lived, was associated in the criminal matter.

Subsequently, petitioner Marion H. Bell was indicted by a grand jury on four counts of income tax evasion. Mehaffy and petitioner discussed both the criminal prosecution and also the possibility of disciplinary action by the Director of Practice of the Treasury Department, the State Board of Accountancy of Arkansas, and the American Institute of Accountants which might follow a conviction in the criminal case. Mehaffy strongly feared that petitioner would have to change his profession if such transpired. It was agreed between them that petitioner would pay an attorney's fee of $10,000 which would cover the defense of the criminal action and the defense of any disciplinary actions if any arose later. Clendening was to receive one-quarter of this fee. During the year 1952 petitioner paid $7,969.62 of that amount for legal services and expenses. In their joint return for that year, the petitioner and his wife included this $7,969.62 as a business expense deduction.

Petitioner originally intended to plead not guilty to the indictment and to stand trial. Mehaffy, as his chief counsel, testified that he believed the petitioner was innocent and that he would have a good chance of acquittal, but that of course he could not guarantee one. Negotiations with government attorneys elicited a promise by the latter to make favorable statements to the court on behalf of the petitioner if he would plead *nolo con-*

*tendere.* Petitioner, upon the insistence of his wife, who thought this would be the best course to follow, thereupon, with the consent of the court, entered a plea of *nolo contendere* to two counts of the indictment. The government moved to dismiss the remaining two counts, which motion was granted. Petitioner was fined $5,000 and placed on probation for a period of three years.

In 1953, following petitioner's plea and sentence, disciplinary actions were commenced by the Director of Practice of the Treasury Department, the State Board of Accountancy of Arkansas and the Executive Director of the American Institute of Accountants. As a result of these actions, the petitioner escaped any permanent disbarment but was suspended from practice or membership for various periods of time. Subsequently all suspensions were lifted and petitioner was fully reinstated to practice and to membership. During the course of these actions petitioner was represented by attorney John T. Williams, an associate of Mr. Mehaffy. Suspension of the State Board of Accountancy of Arkansas was for the same period as the probationary period in District Court. Williams also represented petitioner in his successful attempt to have the District Court reduce this probationary period from three years to one year. Williams testified that for three years he spent the bulk of his time upon these particular matters. Petitioner was not charged any further fee for the representation thus received.

In 1957 petitioner's civil tax liability was determined by the Tax Court. It specifically found that the deficiencies for the years 1945 to 1949, inclusive, were not the result of any fraud or fraudulent scheme to evade payment of a tax. Petitioner paid an additional fee for his representation in such case, but that amount is not involved here.

Before the Tax Court in the instant case the petitioner claimed that the legal fees paid in 1952 for representation in the criminal and civil matters should be deductible as ordinary and necessary business expenses or that in the alternative at least the fees attributable to representation in the civil disciplinary actions should be deductible as such. In so contending, the petitioner argues that a *nolo contendere* plea is not an admission of guilt and the 1957 exoneration of the fraud charges by the Tax Court in the civil action prevents any violation of public policy in allowing the deduction. The Tax Court resolved all questions against the petitioner.

In asking this court to review and set aside the decision of the Tax Court, petitioner claims:

"I.

"The Tax Court erred in refusing to hold that appellants [petitioner's] legal expenses, attributable to his plea of nolo contendere in District Court, were deductible under the Int. Rev.Code of 1939, § 23(a) (1) (A), or, § 23(a) (2), on the grounds that they were ordinary and necessary business expenses, or, business expenses, the deduction of which would not violate public policy.

"II.

"The Tax Court erred in refusing to hold that appellants [petitioner's] legal expenses, attributable to fees paid for representation before the Treasury Department, the Arkansas State Board of Accountancy and the American Institute of Accountants, were deductible under the Int.Rev. Code of 1939, § 23(a) (1) (A), or, § 23(a) (2), on the grounds that they were ordinary and necessary business expenses, or, business expenses.

"III.

"The Tax Court's findings of fact are arbitrary and erroneous and not supported by the evidence."

As to the third claim of error, the Tax Court had ruled that of the total $7,650 paid in 1952 by the petitioner as attorney's fees, the sum of $4,650 was attributable to the criminal proceedings, and $3,000 of the total fee paid was found to be attributable to the various civil regulatory proceedings. Because of our dis-

position of the case, it becomes unnecessary to discuss claimed error No. 3.

Petitioner's primary contention is that a *nolo contendere* plea is not an admission of guilt and that the 1957 exoneration of the fraud charges by the Tax Court prevents any violation of public policy in allowing the deduction. Petitioner states:

> "Two judicial proceedings have preceded the one at bar. The first was the conviction of the appellant [petitioner] upon his plea of nolo contendere, and the second was his absolute exoneration of all wrongdoing in the civil tax suit before the Tax Court in 1957 (Marion H. Bell, supra). The appellant contends that it is the holding in the latter case which this court must abide by in deciding if he should be allowed to deduct attorney's fees paid in 1952."

It has been uniformly held that legal expenses incurred in a criminal proceedings which result in conviction of the taxpayer may not be allowed as deductions. Grounds for denial of deductibility are that such expenses are not "ordinary and necessary" within the purview of the statute and also that to allow as a deduction the expenses incurred in unsuccessfully defending a criminal prosecution would violate public policy.[1] There can be little dispute with the proposition that expenses incurred in unsuccessfully defending a criminal case are not deductible for either or both reasons. The question here arises, however, as to whether or not the entry with

the consent of the court (see Rule 11, F.R.Crim.P., 18 U.S.C.A.) of the plea of *nolo contendere* changes that situation. We think it clear that the entry and acceptance of a plea of *nolo contendere* has all the effects of a plea of guilty insofar as the purposes of the case are concerned. The only distinguishable feature between a plea of *nolo contendere* and that of guilty is that the former cannot be used against the defendant as an admission in any civil suit for the same act. The entry of a plea of *nolo contendere* subjects the defendant to exactly the same maximums of punishment to which he might be subjected following a guilty plea. In United States v. Norris, 1930, 281 U.S. 619, 50 S.Ct. 424, 74 L.Ed. 1076, the Supreme Court explained, beginning at page 622 of 281 U.S., at page 425 of 50 S.Ct.:

> "In the face of an indictment good in form and substance, and of a plea thereto of *nolo contendere*, which, although it does not create an estoppel, has all the effect of a plea of guilty for the purposes of the case (Hudson v. United States, 272 U.S. 451, 455 [47 S.Ct. 127, 71 L.Ed. 347]; United States v. Lair [8 Cir.], 195 Fed. 47, 51), the stipulation was ineffective to import an issue as to the sufficiency of the indictment, or an issue of fact upon the question of guilt or innocence. If the stipulation be regarded as adding particulars to the indictment, it must fall before the rule that nothing can be added to an indictment without the concurrence of the grand jury by which the bill

1. Tracy v. United States, Ct.Cl., 1960, 284 F.2d 379; Port v. United States, 1958, 163 F.Supp. 645, 143 Ct.Cl. 334; Smith v. Commissioner, 1958, 31 T.C. 1; Acker v. Commissioner, 6 Cir., 1958, 258 F.2d 568, affirmed on other grounds, 361 U.S. 87, 80 S.Ct. 144, 4 L.Ed.2d 127; Joseph v. Commissioner, 1956, 26 T.C. 562; Hopkins v. C. I. R., 6 Cir., 1959, 271 F.2d 166, 167, in which the court referred to " * * * the settled rule that legal fees paid by a taxpayer in his defense of an unsuccessful criminal trial for income tax evasion are not deductible."

Burroughs Bldg. Material Co. v. Commissioner, 2 Cir., 1931, 47 F.2d 178, 180, that attorney's fees paid in unsuccessfully defending a criminal prosecution were not " * * * 'ordinary and necessary' incidents of the taxpayer's business." Levinstein v. Commissioner, 19 B.T.A. 99. That the attorney's fees are deductible where the taxpayer successfully defends against the criminal charge, see C. I. R. v. Shapiro, 7 Cir., 1960, 278 F.2d 556, and C. I. R. v. People's-Pittsburgh Trust Co., 3 Cir., 1932, 60 F.2d 187.

was found. Ex Parte Bain, 121 U.S. 1 [7 S.Ct. 781, 30 L.Ed. 849]. If filed before plea and given effect, such a stipulation would oust the jurisdiction of the court. Id., p. 13, citing (at pp. 8, 9 [of 121 U.S., 7 S.Ct. 781]) Commonwealth v. Mahar, 16 Pick. 120, and People v. Campbell, 4 Parker's Cr.Cas. 386, 387, holding that the defendant's consent does not affect the rule. *After the plea, nothing is left but to render judgment, for the obvious reason that in the face of the plea no issue of fact exists, and none can be made while the plea remains of record. Regarded as evidence upon the question of guilt or innocence, the stipulation came too late, for the plea of nolo contendere, upon that question and for that case, was as conclusive as a plea of guilty would have been.* And as said by Mr. Justice Shiras in Hallinger v. Davis, 146 U.S. 314, 318 [13 S.Ct. 105, 36 L.Ed. 986], 'If a recorded confession of every material averment of an indictment puts the confessor upon the country, the institution of jury trial and the legal effect and nature of a plea of guilty have been very imperfectly understood, not only by the authors of the Constitution and their successors down to the present time, but also by all the generations of men who have lived under the common law.'

"The court was no longer concerned with the question of guilt, but only with the character and extent of the punishment. People ex rel. Hubert v. Kaiser, 206 N.Y. 46, 51–52 [99 N.E. 195]. The remedy of the accused, if he thought he had not violated the law, was to withdraw, by leave of court, the plea of *nolo contendere,* enter one of not guilty, and, upon the issue thus made, submit the facts for determination in the usual and orderly way." (Emphasis supplied.)

In Hudson v. United States, 3 Cir., 1925, 9 F.2d 825, affirmed, 272 U.S. 451, 47 S.Ct. 127, 71 L.Ed. 347, cited approvingly in Norris, supra, Chief Justice Stone said, in speaking of *nolo contendere,* at page 455 of 272 U.S., at page 129 of 47 S.Ct.:

" * * * Like the implied confession, this plea does not create an estoppel, but, like the plea of guilty, it is an admission of guilt for the purposes of the case."

After discussing the historical development of the plea, which suggested that a court, upon acceptance of the plea, might be required to impose only a fine rather than imprisonment, the Hudson case concluded, at page 457 of 272 U.S., at page 129 of 47 S.Ct.:

"Undoubtedly a court may, in its discretion, mitigate the punishment on a plea of *nolo contendere* and feel constrained to do so whenever the plea is accepted * * *. But such a restriction made mandatory upon the court by positive rule of law would only hamper its discretion and curtail the utility of the plea." [2]

Two relatively recent cases, Tseung Chu v. Cornell, 9 Cir., 1957, 247 F.2d 929, and United States v. Cosentino, 7 Cir., 1951, 191 F.2d 574, support this court's earlier statement that the plea of *nolo contendere* is "for all practical purposes, the full equivalent of a plea of guilty." Farrington v. King, 8 Cir., 1942, 128 F.2d 785. The Tseung Chu case concluded that a *conviction* following a plea of *nolo contendere* would be no different from one under any other plea.

Petitioner's contention that the Tax Court's conclusion in 1957 in the civil tax suit that the deficiencies in the years 1945 to 1949 were not the result of any fraud or fraudulent scheme to evade payment of a tax should change the effect of the conviction through the prior entry of the *nolo contendere* plea is unsupported by authority and is unconvincing.

2. To the same effect, see also United States v. Denniston, 2 Cir., 1937, 89 F.2d 696, 110 A.L.R. 1296.

What the Tax Court found in the civil proceedings in 1957 could in no way change, limit or detract from petitioner's conviction by his own plea in 1953. It could carry no more weight and have no more effect than the "Stipulation of Facts" filed in United States v. Norris, supra, following the entry of the plea of *nolo contendere* there. The petitioner's contention must be rejected.

Taxpayer's alternative proposition is that that portion of the total fee paid to his attorneys which represents work in connection with the disciplinary actions brought before the Treasury Department, the State Board of Accountancy of Arkansas and the American Institute of Accountants is deductible under the Internal Revenue Code of 1939, § 23(a)(1)(A) or § 23(a)(2) on the grounds that they were ordinary and necessary business expenses or business expenses. In connnection with this point, the Tax Court stated:

> "We hold that no portion of the legal fees paid for representation before the Treasury Department, the State Board of Accountancy of Arkansas and the American Institute of Accountants is deductible. We have found that the petitioner and his attorney recognized the fact that some disciplinary action was bound to be taken by these bodies if the petitioner were convicted of tax evasion. Therefore, these proceedings were so closely related to the criminal conviction that fees paid with respect to them must fall under the same ban against deductibility as do the fees paid in the defense of the criminal action. Thomas A. Joseph, supra.

> "What is more, expenses necessitated by the performance of an act for which the taxpayer has been convicted criminally must be considered as personal expenses. Such expenses cannot be recognized as bearing any reasonable relationship to a trade or business or to the production of income. Richard F. Smith, 31 T.C. 1, 10 (1958) and Port v. United States, 143 Ct.Cl. [334] 418, 163 F.Supp. 645 (1958)."

The disciplinary proceedings before the Treasury Department, etc., arose directly out of the petitioner's conduct which resulted in his entering a plea of *nolo contendere* in the criminal proceedings. The proceedings were not *caused* by the nature of the petitioner's business. Petitioner argues, however, that the court should "look at the final result obtained in the various proceedings" and states that:

> "When litigation concerns business income, then the expense of such litigation is a part of the cost of doing business."

Petitioner argues backward. In effect, he says that because the criminal proceedings and the subsequent orders to show cause which resulted therefrom did affect his business as an accountant, they are properly deductible. We believe that the *cause* and not the *effect* should be the determinative factor. It is the nature of the proceedings which necessitated the expense which should be controlling. The disciplinary actions before the three bodies here resulted (as had been anticipated by petitioner and his counsel) from his own personal misconduct which terminated in his entering a plea whereby he was convicted of tax evasion and subsequently sentenced by reason thereof.

The Supreme Court in the very recent case of United States v. Gilmore, 1963, 372 U.S. 39, 83 S.Ct. 623, 9 L.Ed.2d 570, points the way to sustaining the view taken by the Commissioner in the instant case. Certiorari was granted in the Gilmore case "[b]ecause of a conflict of views among the Court of Claims, the Courts of Appeals, and the Tax Court regarding the proper application" of § 23(a)(2) of the Internal Revenue Code of 1939, 26 U.S.C.A. After suggesting that an opposite holding " 'would carry us too far' and would not be compatible

with the basic lines of expense deductibility drawn by Congress" and citing the "incongruities that would follow", the Supreme Court stated at page 49 of 372 U.S. at page 629 of 83 S.Ct.:

> "For these reasons, we resolve the conflict among the lower courts on the question before us (note 4, supra) in favor of the view that *the origin and character of the claim with respect to which an expense was incurred, rather than its potential consequences upon the fortunes of the taxpayer, is the controlling basic test of whether the expense was 'business' or 'personal' and hence whether it is deductible or not under § 23(a) (2). We find the reasoning underlying the cases taking the 'consequences' view unpersuasive."* (Emphasis supplied.)

If a taxpayer should be convicted of any crime, whether by his own plea or otherwise, the effect on his business could be anticipated as it was anticipated here. If he were a lawyer, he might be disbarred or suspended from practice; if a doctor or a dentist, similar consequences might follow, and his business suffer or be destroyed entirely. Under the teaching of Gilmore, supra, however, it is not the result to which we look in order to determine the deductibility of the expense but the *cause.* The cause was the commission of the crime, and inasmuch as there was a conviction therefor, expenses in defending against it as well as the disciplinary actions that grew out of and were based upon and followed the criminal conviction may not be deductible.

This case is affirmed.