[No. 10,131.]

# THE PEOPLE v. LOUIS E. BARRIO.

PROOF OF CORPORATE EXISTENCE.—If a party is indicted for stealing the property of a corporation, it is sufficient for the prosecution to prove that the company is a corporation *de facto*, doing business as such.

TESTIMONY OF ACCOMPLICE IN CRIME.—One who did not know of the larceny until after it was committed, but who purchased the stolen property under directions of an officer, with money furnished by the officer with a view of detecting the thief, is not an accomplice whose testimony requires corroboration in order to convict the defendant, under section 4 of the Penal Code.

CONFESSIONS AS EVIDENCE.—A confession of a crime made to one in authority, upon a promise to the accused that it will be better for him to make a full disclosure, is not admissible in evidence upon the trial of the accused, because it is not voluntary.

PLEA OF FORMER CONVICTION.—If a defendant in a criminal case appeals from a judgment of conviction, but does not move for a new trial, and the judgment is reversed, and a new trial ordered, the former conviction is not a bar to a new trial.

APPEAL from the County Court of Santa Clara County.

The case was thus: In the County of Santa Clara are extensive mines of quicksilver, which have been worked for many years by the "Quicksilver Mining Company of New York." The defendant was charged in the indictment with having, on the 3d day of February, 1874, stolen ten flasks and three soda bottles containing quicksilver, the property of said corporation. The prosecution, on the trial, called as a witness Charles W. Hinman, who testified that he had lived in Santa Clara County a number of years, and that, while in Mazatlan, Mexico, some two years before the trial, he saw soda bottles, which were manufactured for a man in Santa Clara County, for sale, containing quicksilver, and that he knew the quicksilver must have been stolen. That, on the 5th day of February, 1874, defendant came to him and inquired if he did not want to make a speculation, and informed him that he could sell him quicksilver, and said further, you are engaged in silver mining in Nevada, and need quicksilver. That the witness encouraged him with hopes that he might buy, but told him he had not got the money to pay for it. That the witness immediately went to

the Sheriff's office, and informed the Sheriff of what had taken place, and it was arranged that the witness should buy the quicksilver, and the Sheriff should furnish the money. That the witness had several interviews with the defendant, and agreed to buy the quicksilver at fifty cents per pound. That the defendant delivered it at the witness's place of residence in San Jose, soon after the first conversation, and told witness that it was stolen, and witness paid him for it with money furnished by the Sheriff. It appeared by the testimony of two other men that Barric had hired the guard at the mine to steal the quicksilver for him in the night. It did not appear from the record, but what the theft had been committed before Hinman had his first conversation with the defendant. A flask of quicksilver contained 76½ pounds, and it was worth $1 20 per pound. The flasks were made of iron. The only other testimony was that of Rondel, the superintendent of the mine, who testified that the defendant confessed that he was guilty, in the Sheriff's office, to him and the Sheriff, and his deputy. When Rondel was asked by the prosecution to relate the confession, the attorney for the defendant obtained leave of the Court to ask him some preliminary questions, as to whether the confession was voluntary. These questions, and the reply of the witness, are stated in the opinion. The counsel for the defendant then objected to the confession being received in evidence, because it was obtained under inducements held out by the Sheriff. The Court overruled the objection. The Court charged the jury that a conviction could not be had on the testimony of accomplices alone. The defendant was convicted, and appealed.

*Collins & Burt*, for the Appellant, argued that, excluding the confessions testified to by Rondel, there was no testimony except that of accomplices, contending that Hinman was an accomplice. As to Rondel's testimony, they argued that it should have been excluded, and cited *People* v. *Jones*, 31 Cal. 567; *People* v. *Henessy*, 16 Wend. 147; *People* v. *Badgley*, 16 Wend. 53, and *Mayor, etc., of N. Y.* v. *Walker*, 4 E. D. Smith, 258.

They also argued that it was error to admit parol evidence that the company known by the name of the "Quicksilver Mining Company of New York" was doing business as a corporation *de facto* in California, but contended that proof should have been made that the laws of New York allowed corporations to be formed there for quicksilver mining, and that the corporation had an existence there.

*Moore, Laine, Delmas & Leib,* for the People, argued that the confession of the defendant was voluntary, and that there was no error in admitting the testimony as to the corporation, and cited *People* v. *Hughes,* 29 Cal. 257; *People* v. *Frank,* 28 Cal. 507, and *People* v. *Ah Sam,* 41 Cal. 645.

By the Court, McKINSTRY, J.:

Defendant was indicted for feloniously stealing quicksilver, the property of the "Quicksilver Mining Company of New York."

The prosecution proved by the witness Rondel that the company known by the name given in the indictment was a corporation *de facto,* doing business as such. This was sufficient. (*People* v. *Frank,* 28 Cal. 507; *People* v. *Hughes,* 29 Cal. 257; *People* v. *Ah Sam,* 41 Cal. 645.)

The witness, Hinman, was not an accessory before the fact. It does not appear from the transcript that he knew anything of the alleged crime until after it was committed.

The confession testified to by Rondel, the Superintendent of the company, in the Sheriff's office, and in the presence of the Sheriff and his deputy, is to be regarded as if made to the Sheriff.

The following is a transcript from the record:

"Q.—Did you say to him that it would be better for him to make a full disclosure?

"A.—I don't know but that something of that kind might have been said.

"Q.—Do you know by whom?

"A.—I do not know.

"Q.—But by some one of you?

"A.—It may have been said.

"Q.—Isn't that your impression that some such remark was made to him?

"A.—It is possible."

The witness was then permitted to detail the confession, notwithstanding the objection of defendant.

"Before any confession can be received in a criminal case it must be shown that it was voluntary. The course of practice is, to inquire whether the prisoner had been told that it would be better for him to confess, or worse for him if he did not confess, or whether language to that effect had been addressed to him." (1 Green. Ev. 219.) The Court below should have been satisfied that the confession was voluntary; certainly the preliminary testimony was of a nature to excite the gravest suspicion that improper inducements had been held out to elicit it. But the testimony affirmatively established the inadmissibility of evidence of the confession. It would be substituting sound for sense to say that the prosecuting witness did not in effect declare that the Sheriff or his deputy, or he himself in their presence and hearing, said to the prisoner, "It will be better for you to make a full disclosure."

The rule is without exception that such a promise made by one in authority will exclude a confession. Public policy absolutely requires the rejection of confessions obtained by means of inducements held out by such persons. It may be true, even in such cases—owing to the variety in character and circumstances—that the promise may not in fact induce the confession. But as it is thought to succeed in a large majority of instances, it is wisely adopted as a rule of law applicable to them all. (Id. 222, 223, and cases cited.)

We cannot too strongly urge on the District Attorneys never to offer evidence of confessions, except it has first been made to appear that they were made voluntarily. We ought not to be compelled to reverse a judgment because of a violation of so well established a rule of law.

The defendant asks to be finally discharged because he did not move for a new trial in the Court below. But the question suggested by this application has been passed

upon by this Court, and we see no good reason for disturb-- ing the former ruling. (*People* v. *Olwell*, 28 Cal. 456.)

Judgment reversed and cause remanded for new trial.

Neither Mr. Justice CROCKETT nor Mr. Justice RHODES expressed an opinion.