[Crim. No. 2577.  Fourth Dist., Div. Two.  Apr. 19, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. WILLIAM LESLIE KNIGHTON, Defendant and Appellant.

William Leslie Knighton, in pro. per., for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Philip M. Rosten, Deputy Attorney General, for Plaintiff and Respondent.

McCABE, P. J.—By information defendant was charged in count I with the offense of issuing a check without sufficient funds in violation of Penal Code section 476, subdivision (a), and in count II defendant was charged with unlawful taking of personal property of Garner Ford, to wit, an automobile, a

violation of Penal Code section 487 (grand theft). Additionally, the information alleged a prior conviction in the State of New Mexico for issuing worthless checks, a felony, and that defendant had served a term of imprisonment in that state prison. Before trial and out of the presence of the jury, defendant admitted the prior conviction of the felony as alleged in the information.

The charges against the defendant arise out of his attempted purchase of a 1963 Ford automobile from Garner Ford, a local Ford agency, in February 1963. At the trial according to the testimony of a salesman, Mr. Testa, the defendant came onto the Garner Ford used car lot on Saturday, February 2, 1963. He assertedly indicated to Testa that he was a newcomer to California from the east, but was employed locally as a mechanical engineer at Hunter Engineering. After looking at many used cars, he stated he had enough money to pay for a car, but needed some of it to get "settled." Testa testified the defendant told him he had a 1962 Thunderbird which he hoped to sell and if he did so his financial problems would be resolved.

Mr. Testa urged that the defendant make a down payment and finance the balance of the purchase price on a conditional sales contract through Garner Ford, but defendant refused by stating he could get funds through Hunter Engineering's credit union. After looking at some other cars, defendant left the used car lot indicating he wanted to look around some more.

The following day, Sunday, February 3, the defendant returned to the lot and finally selected a 1963 Ford. Testa drew up a purchase order, indicating a purchase price of $2,738.80, which defendant signed. The defendant alleged he had forgotten his checkbook and asked for a Security First National Bank counter check. Testa offered to allow him to sign a one-day contract, but defendant refused and insisted on the counter check. Testa complied and defendant filled out the counter check. Defendant assertedly could not remember his account number and stated he would replace the counter check with his personal check, which he did on February 4. Becoming cautious, Testa told the defendant he couldn't hold the check and it would be deposited in the normal course of business. Although defendant assured Testa the check was good. Testa told him he would have to make it good if he didn't have funds to cover it. Defendant took delivery of the auto on this date.

Several days later Testa took defendant's check to the Riverside main office of Security First National Bank to negotiate it, but on presentment the check was dishonored. Testa attempted to contact defendant at Hunter Engineering, but defendant, although employed there, had not reported to work. Defendant could not be contacted at his residence address. The 1963 Ford was purportedly recovered three weeks later in Bakersfield, California. At the trial and upon cross-examination, Mr. Testa admitted, in his employment, he was on a straight commission only and was financially responsible for the auto if not recovered.

An assistant cashier from the bank testified as a part of the prosecution's case that the defendant had in fact opened an account on February 4, 1963, with an initial deposit of $203.94, but the account later became overdrawn and was closed by the bank on March 26, 1963. No credit arrangements had been made by the defendant.

The defendant, represented by court-appointed counsel, testified he had looked at various automobiles on February 2, 1963, but had not discussed financing. When he returned to the lot on February 3, a Sunday, he selected a 1963 Ford Fairlane and Testa wrote up a sales order. Then, according to the defendant, he asked to see a sales manager to discuss a matter which he did not feel Testa had authority to dispose of. This request was granted by Testa. Defendant then told the sales manager in Testa's presence, that he didn't have any money at present, but needed a car to get to work the following day. Testa then suggested financing, but defendant stated he could not obtain financing through a bank since Ford Motor Credit Company had just repossessed his car. Defendant did state he could obtain a loan through his company's credit union. Defendant testified the parties agreed defendant could draw a counter check on a bank and the sales manager would hold it for 10 days. Defendant then signed the papers and took possession of the car. The following day, after he had opened a commercial account, he replaced the counter check with a personal check, dated February 4, and gave it to the sales manager who initialled it at the bottom. Defendant testified he was assured by the sales manager the check would be held for later deposit.

Defendant attempted to obtain funds from his credit union, but was unable to do so since he had not yet been employed long enough to be eligible for a loan. Similar attempts to do so at two loan companies were also fruitless.

Defendant failed to tell Garner Ford about his inability to obtain financing. Defendant testified he returned the 1963 Ford about a week after he wrote the check by parking it at night on the street adjacent to the used car lot and placing the keys inside the car on the floorboard. He then walked to the bus station at Fifth and "F" Street in San Bernardino, took a bus to Los Angeles and returned to the midwest by hitchhiking.

During the cross-examination of defendant, the prosecuting attorney asked the defendant whether he had ever been convicted of a felony. The defendant answered in the affirmative and stated that the conviction was in the State of New Mexico and that he served time for the conviction. No objection was interposed by the defendant to the questions. At the conclusion of the cross-examination on this point, the district attorney sought to introduce into evidence an abstract of judgment of conviction from the State of New Mexico. This was objected to by defendant contending that the impeaching testimony had been admitted and it was unnecessary to have the abstract of judgment admitted into evidence. This objection was argued out of the presence of the jury. The court sustained the objection and the abstract of judgment was not admitted into evidence; consequently the jury only had defendant's testimony on this point. As to the effect, if any, of the impeaching testimony of a prior conviction, the trial judge gave the jury CALJIC No. 52 (revised) and CALJIC No. 54.

After the verdict of conviction and before the pronouncement of judgment and sentence, the defendant made a motion to withdraw his admission of the prior conviction. This matter was set down for hearing. At the hearing the defendant contended that in light of the decisions in *In re Woods*, 64 Cal.2d 3 [48 Cal.Rptr. 689, 409 P.2d 913]; *In re Luce*, 64 Cal.2d 11 [48 Cal.Rptr. 694, 409 P.2d 918]; *In re Tucker*, 64 Cal.2d 15 [48 Cal.Rptr. 697, 409 P.2d 921], the prosecution was obligated to introduce evidence that during the course of the trial which resulted in prior conviction, the constitutional rights of the defendant had been protected and safeguarded or, after being advised of those rights, he had properly waived them. During the hearing the district attorney moved to strike the alleged prior conviction which motion was granted and the alleged prior ordered stricken. Because of this order, the

trial judge was under no obligation to rule on defendant's motion since the issue had become moot.

On this appeal, defendant urges (1) the district attorney's cross-examination on the prior conviction constituted prejudicial error for the prior felony conviction referred to for impeachment purposes was not shown to have been obtained with the required observance of the constitutional guarantee required by *Woods, Luce* and *Tucker, supra,* and (2) the testimony of the prosecution's chief witness was spurious and not worthy of belief. Defendant contends the prior conviction may not be used for impeaching purposes since the prior conviction was later stricken and therefore should not have been used for impeaching purposes.

Under the facts of *Woods, Luce* and *Tucker, supra,* the prior convictions were used to establish habitual criminality or to elevate a misdemeanor to a felony. In none of these cases was the prior conviction used for impeachment purposes and the enunciations in these cases do not compel us to decide they are controlling in the case at bench.

As stated, the defendant did not object to the use of the prior conviction on the impeachment proceedings and did not raise that specific issue with the trial court during the trial or subsequent to the trial either by motion for new trial or by any other process. Thus for the first time on this appeal, the defendant is raising the issue of the use of a prior conviction for impeachment purposes. By doing so he is collaterally attacking the prior conviction in the State of New Mexico and asserting a federal constitutional question is presented.

Section 2051, Code of Civil Procedure, provides: "A witness may be impeached by the party against whom he was called, by contradictory evidence or by evidence that his general reputation for truth, honesty, or integrity is bad, but not by evidence of particular wrongful acts, except that it may be shown by the examination of the witness, or the record of the judgment, that he had been convicted of a felony unless he has previously received a full and unconditional pardon, based upon a certificate of rehabilitation. [Enacted 1872.]"

The substance of former section 2051 has been continued in the enactment of the Evidence Code, sections 787 and 788, effective January 1, 1967, illustrating the continuation of the same rule of evidence.

It has long been the California procedural rule that when a defendant takes the stand as a witness, he may be impeached in the same manner as any other witness. (*People*

v. *King,* 13 Cal.2d 521, 528 [90 P.2d 291]; *People* v. *Romer,* 218 Cal. 449, 451-452 [23 P.2d 749]; *People* v. *Gordon,* 206 Cal. 29, 34 [273 P. 568].)

This procedural and evidentiary rule was recently again emphasized by Mr. Justice Mosk in *People* v. *Smith,* 63 Cal.2d 779, 790 [48 Cal.Rptr. 382, 409 P.2d 222], when he stated: ''A defendant who testifies in his own behalf may be impeached by proof he has suffered one or more prior convictions of felony in this state or elsewhere. (Code Civ. Proc., §§ 2051, 2065.) While the courts will be zealous to insure that the prosecuting attorney is not permitted to delve into the details and circumstances of the prior crime [Citations], simple questions designed to identify the particular felony involved in the conviction are allowable.''

■ California's procedural law permits impeachment by prior convictions even where defendant, before trial, has admitted the prior convictions. (*People* v. *Pike,* 58 Cal.2d 70, 93 [22 Cal.Rptr. 664, 372 P.2d 656], *cert. den.* 371 U.S. 941 [9 L.Ed.2d 277, 83 S.Ct. 324]; *People* v. *Cobb,* 45 Cal.2d 158, 162-163 [287 P.2d 752]; *People* v. *Molera,* 242 Cal.App.2d 736, 738 [51 Cal.Rptr. 781]; *People* v. *De La Paz,* 237 Cal.App.2d 81, 83 [46 Cal.Rptr. 614].) ■ The only restriction placed upon such inquiries is that the district attorney's questioning be conducted in good faith. (*People* v. *Perez,* 58 Cal.2d 229, 238 [23 Cal.Rptr. 569, 373 P.2d 617]; *People* v. *Roberts,* 213 Cal.App.2d 387, 397-398 [28 Cal.Rptr. 839], *cert. den.* 375 U.S. 909 [11 L.Ed.2d 149, 84 S.Ct. 204].)

The prosecutor's good faith is obvious. Not only had the defendant, before trial, admitted the prior convictions but the prosecutor was possessed of a certified copy of the abstract of judgment from the State of New Mexico.

■ In the case of *Johnson* v. *Zerbst,* 304 U.S. 458 [82 L.Ed. 1461, 58 S.Ct. 1019, 146 A.L.R. 357], a federal conviction was involved and the defendant contended that he had not been represented by legal counsel and was entitled to such representation and not having had it, the conviction was an illegal one. The case was in the Supreme Court by the granting of a writ of certiorari after the denial of a petition for writ of habeas corpus in the lower federal court. After a discussion regarding the requirement of the Sixth Amendment that the defendant who is charged with a crime is entitled to the assistance of counsel and that compliance with this mandate is an essential judicial prerequisite to the

court's jurisdiction, the Supreme Court, speaking through Mr. Justice Black, said at p. 468: "It must be remembered, however, that a judgment cannot be lightly set aside by collateral attack, even on *habeas corpus*. When collaterally attacked, the judgment of a court carries with it a presumption of regularity. Where a defendant, without Counsel, acquiesces in a trial resulting in his conviction and later seeks release by the extraordinary remedy of *habeas corpus*, the burden of proof rests upon him to establish that he did not competently and intelligently waive his constitutional right to assistance of Counsel. If in a *habeas corpus* hearing, he does meet this burden and convinces the court by a preponderance of evidence that he neither had Counsel nor properly waived his constitutional right to counsel, it is the duty of the court to grant the writ."

The pronouncement in *Johnson* v. *Zerbst, supra,* was extended in *Moore* v. *Michigan,* 355 U.S. 155 [2 L.Ed.2d 167, 78 S.Ct. 191]. There the Supreme Court of the United States, speaking through Mr. Justice Brennan, stated at p. 195 [78 S.Ct.; 355 U.S. at p. 161, 2 L.Ed.2d at p. 172]: "This court held in *Johnson* v. *Zerbst, supra,* that when a judgment of conviction entered in a federal court is collaterally attacked upon the ground that the defendant did not have the benefit of counsel, he has the burden of showing, by a preponderance of the evidence, that he did not have counsel and did not competently and intelligently waive his constitutional right to the assistance of counsel. We have found that the petitioner was entitled to the benefit of counsel to secure the fair hearing guaranteed to him by the Due Process Clause of the Fourteenth Amendment. Whatever may be the differences in the substantive right to counsel in federal and state cases, when the defendant in a state case has established his constitutional right to the benefit of counsel, he should carry the same burden of proving nonwaiver as is required of a defendant in a federal case. We therefore hold that the rule of *Johnson* v. *Zerbst* applies in this case and that the petitioner had the burden of showing, by a preponderance of the evidence, that he did not intelligently and understandingly waive his right to counsel."

From these cases we must conclude that when the defendant challenges the use of a prior conviction for purposes other than elevation or habitual criminality, contending he was not represented by counsel or, after being advised of his right, had not competently and intelligently waived the

right, he must carry the burden of proof. *Woods, Luce* and *Tucker, supra,* require the stated exception.

██ *Spencer* v. *Texas,* 385 U.S. 554 [17 L.Ed.2d 606, 87 S.Ct. 648], finalizes, so far as the Supreme Court of the United States is concerned, the law that the state-approved procedure permitting pleading and use of prior convictions is not violative of any federal constitutional prohibition. In *Spencer,* the Supreme Court had before it three separate and distinct cases but wrote its opinion on all cases making pronouncements through Mr. Justice Harlan. In *Spencer, supra,* the Supreme Court recites that all states and the federal government have enacted recidivist statutes and it had previously sustained such statutes from federal constitutional attacks. (See also *Oyler* v. *Boles,* 368 U.S. 448 [7 L.Ed.2d 446, 82 S.Ct. 501]; *Gryger* v. *Burke,* 334 U.S. 728 [92 L.Ed. 1683, 68 S.Ct. 1256]; *Graham* v. *West Virginia,* 224 U.S. 616 [56 L.Ed. 917, 32 S.Ct. 583]; *McDonald* v. *Massachusetts,* 180 U.S. 311 [45 L.Ed. 542, 21 S.Ct. 389]; *Moore* v. *Missouri,* 159 U.S. 673 [40 L.Ed. 301, 16 S.Ct. 179].)

This is true whether the jury is to assess the punishment to be imposed in a capital or other criminal case, or to make findings on the prior wherein the enhancement of punishment was left to be imposed by other authority. (*Spencer* v. *Texas supra; Maxwell* v. *Dow,* 176 U.S. 581 [44 L.Ed. 597, 20 S.Ct. 448]; *Hallinger* v. *Davis,* 146 U.S. 314 [36 L.Ed. 986, 13 S.Ct. 105].)

In *Spencer, supra,* the Supreme Court stated at p. 652 [87 S.Ct.; 17 L.Ed.2d at p. 612]: "Because such evidence is generally recognized to have potentiality for prejudice, it is usually excluded except when it is particularly probative in showing such things as intent . . . or when the defendant has testified and the State seeks to impeach his credibility, *Giacone* v. *State,* 124 Tex.Crim.Rep. 141 [62 S.W.2d 986]."

In affirming the judgments in *Spencer, supra,* the Supreme Court held at p. 653 [87 S.Ct.; 17 L.Ed.2d at p. 613]: "To say the United States Constitution is infringed simply because this type of evidence may be prejudicial and limiting instructions inadequate to vitiate prejudicial effects, would make inroads into this entire complex code of state criminal evidentiary law, and would threaten other large areas of trial jurisprudence."

In deciding whether limiting instructions were efficacious where the evidence of prior convictions is admitted to evi-

dence, the court said at p. 653 [87 S.Ct.; 17 L.Ed.2d at p. 614] : "It is contended nonetheless that in this instance the Due Process Clause of the Fourteenth Amendment requires the exclusion of prejudicial evidence of prior convictions even though limiting instructions are given and even though a valid state purpose—enforcement of the habitual offender statute—is served. We recognize that the use of prior-crime evidence in a one-stage recidivist trial may be thought to represent a less cogent state interest than does its use for other purposes, in that other procedures for applying enhancement-of-sentence statutes may be available to the State that are not suited in the other situations in which such evidence is introduced. We do not think that this distinction should lead to a different constitutional result."

In *Spencer, supra,* the Supreme Court denied it had the right to establish itself as a "rule-making organ for the promulgation of state rules of criminal procedure. And none of the specific provisions of the Constitution ordains this court with such authority." It held in *Spencer, supra,* that where there is a legitimate state purpose and a long standing and widely used procedure of the type here involved, the Supreme Court would not because of possible collateral prejudice declare such procedures unconstitutional under the due process clause.

In the concurring opinion by Mr. Justice Stewart, he states : "The question is whether those procedures fall below the minimum level the Fourteenth Amendment will tolerate."

The reasoning of the Supreme Court seems to receive the concurrence of Mr. Justice Peters in *In re Streeter,* 66 Cal.2d 47, 50-51 [56 Cal.Rptr. 824, 423 P.2d 976], *Streeter* involves a collateral attack by way of procedure in habeas corpus. Mr. Justice Peters denies the application of the pronouncements of *Woods, Luce* and *Tucker, supra,* to a factual situation in which the Adult Authority has the discretion to determine the term to be served by defendant. In *Streeter, supra,* it is stated : ". . . the prior convictions simply form a part of the comprehensive body of material on the basis of which the Adult Authority" fixes the term.

It seems to us the same reasoning is justly applicable to the factual situation where the prior conviction is admitted for the limited purpose of impeaching evidence. The jury considers the evidence of prior convictions together with a comprehensive body of other evidence to determine credibility.

The jury does not determine credibility of the witness solely from the prior conviction but is instructed to consider the character of the witness, the manner of the witness while on the witness stand, the witness' relation to the case, his degree of intelligence, his bias or prejudice, his testimony, evidence of his character for truth, honesty or integrity or of contradictory evidence, and the witness' inconsistent statements. Thus the evidence of a prior conviction is only an element, only one element which is to be considered by the jury in determining the credibility of a witness. We cannot state that a juror or a jury will give a lesser or greater weight to one element over another or others.

We conclude that eliciting impeaching testimony from the defendant that he had been previously convicted and had served a term in a state prison is not violative of any federal or state constitutional rights.

The trial judge gave an instruction to the jury as to the use with which they could consider the evidence. This instruction adequately protected defendant's substantive rights.

▇ Since the procedure of eliciting the impeaching testimony involved a rule of procedure and evidence and was not violative of the constitutional right of due process as decided in *Zerbst, Moore,* and *Spencer, supra,* the defendant may not raise the issue for the first time on appeal. Particularly is this true when no objection is made at trial court level.

▇ Defendant cannot here complain of the failure of the trial judge to give a specific and particularized instruction to the jury that the testimony of a prior conviction could be used for the limited purpose of impeaching defendant since defendant did not offer or request such an instruction. He cannot raise this issue for the first time on appeal. (*People* v. *White,* 50 Cal.2d 428, 430 [325 P.2d 985] ; *People* v. *Holbrook,* 45 Cal.2d 228, 233 [288 P.2d 1] ; *People* v. *Simeone,* 26 Cal.2d 795, 808 [161 P.2d 369].) The trial court gave adequate guidance to the jury by giving CALJIC No. 52 (revised) and CALJIC No. 54.

▇ Defendant would have us weigh the evidence and judge the credibility of the witness, Mr. Testa. This is not a function of or within the authority of this court. It is for the trier of the fact to resolve inconsistencies and contradictions, if any, in the evidence, *People* v. *Johnson,* 187 Cal.App.2d 116, 122 [9 Cal.Rptr. 571], unless it can be stated the evidence is inherently improbable or incredible as a matter of law. (*People* v. *McNeal,* 123 Cal.App.2d 222 [266 P.2d 529].)

As stated in *People* v. *Johnson, supra,* at p. 122: "Testimony is not inherently improbable unless it appears that what was related or described could not have occurred. (*Trancoso* v. *Trancoso,* 96 Cal.App.2d 797 [216 P.2d 172]; *People* v. *Bahara,* 159 Cal.App.2d 160 [323 P.2d 453].) 'To warrant the rejection of the statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions. [Citations.]' (*People* v. *Huston,* 21 Cal.2d 690, 693 [134 P.2d 758]; *People* v. *Simpson,* 43 Cal.2d 553 [275 P.2d 31].)"

There has been no showing that the testimony given by the witness, Mr. Testa, is inherently improbable. Any testimony in conflict with his testimony merely created a conflict which was resolved by the trier of the fact in discharge of duty. We find no merit in defendant's contention.

Judgment affirmed.

Kerrigan, J., and Tamura, J., concurred.