[Crim. No. 17113. Second Dist., Div. Two. May 6, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
LAWRENCE LEE CARTER, Defendant and Appellant.

## COUNSEL

Clifford Douglas, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Howard J. Schwab, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

FLEMING, J.—Lawrence Lee Carter was charged with the murder of Artelyous Jacobs on 29 December 1967. A prior conviction for assault with a deadly weapon was charged and admitted. A jury found Carter guilty of murder in the first degree, and the court sentenced him to life imprisonment. He appeals.

The case involved a singularly brutal and wanton killing by two men and three girls, who pursuant to a prearranged scheme and under the pretext of prostitution lured the victim to an empty apartment, where he was assaulted and beaten to death by Carter and another in the course of robbery. The net proceeds of the robbery amounted to the pair of new shoes which Jacobs was wearing. On appeal, Carter does not challenge the sufficiency of the evidence, so we summarize only that part which relates to his contention that a tape-recorded confession should not have been admitted in evidence because obtained in violation of his constitutional rights.

At the trial Carter objected to the introduction of the confession on two specific grounds: (1) he was coerced into making it by interrogation which continued after he had invoked his right to silence; (2) at the time he made the confession he had not been correctly advised of his right to counsel. (*Miranda* v. *Arizona*, 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].)

On *voir dire* Carter testified that he was arrested by Officers Farwell and Buma of the Los Angeles Police Department and taken to the division police station. The officers asked him his whereabouts on the evening of the killing, and he responded with a non-incriminating answer. They then asked if he would consent to take a lie detector test downtown, and he said he would. At the Police Administration Building in Los Angeles the officers turned him over to Officer Funk for the lie detector test. Officer Funk asked Carter a few preliminary questions and then asked him what he knew about the killing of Jacobs. Carter said he knew nothing about the killing, but, according to Carter, he was told by Funk that the polygraph showed he was lying and it would be better for him if he told the truth. Carter again denied knowledge of the killing. On completion of the test Carter was taken to another room, and within a short time Officers Farwell and Buma entered. According to Carter, Officer Buma read a statement of his rights and asked him if he wanted to confess, to which Carter replied he had nothing to say. Officer Buma then left the room. Officer Farwell asked Carter if he wanted to talk, and, according to Carter, he again said

he did not. Officer Farwell then said he would go talk to "the young ladies," referring to the girls who were Carter's confederates, and return later to talk to Carter. At that point Carter told Officer Farwell not to go but to let him think for a minute. Farwell then gave Carter his *Miranda* warnings, and Carter said he understood them. Carter thereupon confessed to the killing of Jacobs.

Officer Farwell testified on *voir dire* that after he had arrested Carter he took him to the division police station, where he asked him how long he had known the girls, how well he knew them, and what kind of activity they usually participated in. He then took Carter to the Police Administration Building and delivered him to Officer Funk for the lie detector test. Farwell told Officer Funk enough about the crime to administer the test and then left to interview other suspects. On his return, Officer Funk reported that the test showed Carter had knowledge of and was involved in the crime. Officers Farwell and Buma then went to the room where Carter was being held, and Officer Buma read to him a statement of his rights. Officer Farwell denied that Carter ever said he did not want to make a statement and denied telling him that he had been implicated by the lie detector test. When Carter said he didn't quite understand his rights, Officer Buma told Farwell to explain his rights to him, saying he was going to talk to the girls. Buma then left the room and activated a tape recorder. Officer Farwell gave Carter a further explanation of his *Miranda* rights, which Carter indicated he understood. Thereafter Carter confessed to the crime. When on cross-examination Officer Farwell was asked what he had told Carter about the results of the lie detector test, he said he had not told him anything, then that he didn't believe he had said anything, then "I say probably not, I am not sure. No."

On the basis of the foregoing testimony, the court overruled the objections to Carter's confession, and admitted it in evidence.

## 1. *Defendant Did Not Invoke His Right to Silence*

 Defendant contends his confession was coerced because he told the police he did not want to make a statement. He claims Officer Farwell continued to question him after he had twice indicated he did not wish to talk. This claim was directly contradicted by Officer Farwell, whose testimony thus presented a disputed issue of fact for the trial court to determine. The trial court expressly found against defendant on this issue, and since there was evidence to support its finding, the finding is conclusive on appeal. (*People* v. *Midkiff*, 262 Cal.App.2d 734, 739 [68 Cal.Rptr. 866].)

## 2. *Defendant Was Properly Advised of His Right to Counsel Prior to His Confession*

We have listened to the tape of Carter's confession, and it shows that he was fully and carefully advised of his rights prior to giving his confession. Defendant argues that while he was advised of his right to appointed counsel he was not advised that he had an "immediate" right to appointed counsel. He points to no authority as the source of such a right, and the *Miranda* opinion itself expressly denies the right to a "station-house lawyer." (*Miranda* v. *Arizona* (1966) 384 U.S. 436, 474 [16 L.Ed.2d 694, 723, 86 S.Ct. 1602, 10 A.L.R.3d 974].) Carter had no immediate right to appointed counsel, and he was not misinformed of his rights.

## 3. *Defendant's Confession Was Not Coerced*

Although in the trial court defendant's objections to the admissibility of his confession were limited to the two grounds previously discussed, on appeal he has raised two other grounds: first, that his confession was coerced by the administration of the lie detector test; second, that the failure of the police to advise him of his rights prior to the lie detector test renders his subsequent confession invalid.

The claim of coercion is one which a defendant can raise for the first time on appeal if the uncontradicted record clearly establishes the existence of coercion. (*People* v. *Sanchez,* 70 Cal.2d 562, 571-572 [75 Cal.Rptr. 642, 451 P.2d 74].) But when a defendant makes such an evidentiary claim for the first time on appeal, he is restricted to the evidence which was introduced in the trial court. At bench, we have little information about what was said and done during the course of the lie detector test. We know the giving of the test itself did not amount to coercion, because on defendant's own testimony he consented to it. While his consent may have been without legal advice, there is no evidence that it was forced. Insofar as the conduct of the test is concerned, the only evidence which might support a claim of coercion is Carter's testimony that Officer Funk told him the test showed he was lying, that he had better come across, that he ought to come out and be truthful about it. While the statements attributed by Carter to Officer Funk could, under some circumstances, be deemed coercive (*People* v. *Barric,* 49 Cal. 342; *People* v. *Russell,* 259 Cal.App.2d 637, 645-646 [66 Cal.Rptr. 594]; *People* v. *Leavitt,* 100 Cal.App. 93 [279 P. 1056]), under other circumstances they could be regarded merely as exhortations to tell the truth (*People* v. *Hill,* 66 Cal.2d 536, 549-550 [58 Cal.Rptr. 340, 426 P.2d 908]; *People* v. *Barreto,* 256 Cal.App.2d 392, 408 [64 Cal.Rptr. 211]; *People* v. *Nelson,* 224 Cal. App.2d 238, 250-251 [36 Cal.Rptr. 385]). Significantly, Carter did not

confess to Officer Funk in response to these statements. Nor is there any evidence that Carter understood these statements as threats or promises or that he was influenced or pressured by them into giving a confession. We are thus left with statements of an ambiguous nature, which might be interpreted as coercive if such a claim had been made, but which under the present record are unaccompanied by any evidence as to their effect on the person to whom they were addressed. In the absence of such evidence the claim of coercion cannot be sustained. (*People* v. *Lara,* 67 Cal.2d 365, 392 [62 Cal.Rptr. 586, 432 P.2d 202].)

4. *The Objection That the* Miranda *Warnings Should Have Been Given Prior to the Lie Detector Test Is Not Timely*

■ Defendant's other point raised for the first time on appeal is that his confession should not have been received in evidence because he had not been given the *Miranda* warnings prior to the lie detector test. Defendant argues that the administration of the lie detector test was a form of psychological pressure, inherently coercive, which led to and laid the groundwork for his subsequent confession, that since he had been given the lie detector test without proper warnings, his subsequent confession stemmed from an invalid interrogation and hence was inadmissible as illegally obtained evidence.

If such a claim had been timely presented in the trial court it might well have been sustained. *Miranda* v. *Arizona,* 384 U.S. 436, 444 [16 L.Ed.2d 694, 706, 86 S.Ct. 1602, 10 A.L.R.3d 974], declares: "Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." (See also pp. 478-479 [16 L.Ed.2d 725-727].) Questioning during the course of a lie detector test certainly qualifies as a form of custodial interrogation. However, it is not the failure of the police to warn the suspect about his rights which is specifically outlawed by *Miranda* but rather the use of evidence obtained from the suspect in the absence of suitable warning. Here, although the defendant was not properly advised of his rights prior to his questioning in the course of the lie detector test, none of the statements obtained from him in that test were offered in evidence against him at the trial. The confession introduced at the trial was obtained from him after he had been fully advised of his rights. In such a situation the defendant must establish in some manner that the evidence he seeks to exclude stemmed from or was the product of statements illegally obtained from him prior to the time he had been given the *Miranda* warnings. This Carter failed to do, for he produced no evidence to show that the conduct of the lie detector test caused him to believe he had incriminated himself

and thereby brought about his later confession. (Cf. *People* v. *Sanchez,* 70 Cal.2d 562, 574 [75 Cal.Rptr. 642, 451 P.2d 74]; and *United States* v. *Bayer,* 331 U.S. 532, 540 [91 L.Ed. 1654, 1660, 67 S.Ct. 1394] involving the sequence of an invalid confession and a subsequent valid confession.)

Defendant now asks us to assume a causal connection between the lie detector test and his subsequent confession. But absent any evidence of cause and effect we cannot speculate there was such a connection or assume that the psychological pressure of questions and answers in the lie detector test brought about the subsequent confession. (*People* v. *Eli,* 66 Cal.2d 63, 77 [56 Cal.Rptr. 916, 424 P.2d 356]; *People* v. *Barreto,* 256 Cal. App.2d 392, 408 [64 Cal.Rptr. 211].) Defendant's argument comes too late, for like other objections to the admissibility of evidence the proper place to have made it was in the trial court. (*People* v. *Merchant,* 260 Cal. App.2d 875, 881 [67 Cal.Rptr. 459]; *People* v. *Marquez,* 259 Cal.App.2d 593, 602-603 [66 Cal.Rptr. 615]; *People* v. *Castro,* 257 Cal.App.2d 643 [65 Cal.Rptr. 62].) The requirement of timeliness for an evidentiary objection serves a practical purpose in the legal order. Had Carter presented to the trial court a claim of psychological coercion brought about by the lie detector test, both prosecution and defense would have had an opportunity to meet the issue by introducing evidence which showed the form of the test, how it had been conducted, what questions were asked, and what responses were given. With issue joined and evidence presented on both sides, the trial court could have knowledgeably ruled on the contention and admitted or rejected the subsequent confession on the basis of the showing made before it. The present record, however, is barren of any proof to support such a claim.

We close our comments on this point by suggesting that in future cases the police would be well advised to warn a suspect in custody about his rights prior to any interrogation conducted as part of a lie detector test. Otherwise it seems probable that if timely objection is made any subsequent confession reasonably related in point of time to the lie detector test will become inadmissible evidence.

## 5. *Other Claims of Error*

Carter contends he was prejudiced by the trial court's failure to instruct the prosecution not to elicit information about his prior felony conviction for assault with a deadly weapon if he undertook to testify in his own behalf. Carter contends that the evidentiary value of this conviction would have been outweighed by its prejudicial effect, and that he was prevented from testifying by the trial court's failure to exclude this evidence

under section 352, subdivision (b) of the Evidence Code.[1] ■ However, a felony conviction is a proper way to impeach the credibility of a witness (Evid. Code, § 788), even if the witness is a defendant. (*People* v. *Knighton,* 250 Cal.App.2d 221, 227 [58 Cal.Rptr. 700].) ■ Carter's prior conviction for assault had some relationship to his credibility in the present case and would have had a direct bearing on credibility if he had taken the stand and denied the assault on the victim in the present case. ■ The commission of a prior comparable crime is evidence which a jury can properly take into consideration in weighing the credibility of a defendant's denial of the current charge.

■ Carter complains of the failure of the trial court to instruct the jury that one "who feloniously steals, takes and carries away the personal property of another, of any value, from the person of another is guilty of grand theft." The point has no merit, both because defense counsel at the trial withdrew his request for this instruction and because the evidence showed that Carter intended to take Jacobs' property by force, i.e., he intended robbery, not merely grand theft. (Pen. Code, § 211.)

The judgment is affirmed.

Roth, P. J., and Herndon, J., concurred.

---

[1]"The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will . . . (b) create substantial danger of undue prejudice. . . ."