Filed 7/20/21  P. v. Feinga CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C086735 |
| Plaintiff and Respondent, | (Super. Ct. No. 16FE021729) |
| v. | |
| OFA KI FEINGA, | |
| Defendant and Appellant. | |

Defendant Ofa Ki Feinga appeals from a conviction for assault with a deadly weapon.  On appeal, he contends:  (1) the trial court violated his right to due process by admitting the testimony of a child witness because it was inherently improbable and based on inadmissible hearsay, and (2) he is entitled to a remand to allow the trial court to determine whether to grant him a mental health diversion under Penal Code section 1001.36 (unless otherwise stated, statutory section references that follow are found in the Penal Code).

1

We agree that section 1001.36 is retroactive and will remand to the trial court to determine whether defendant qualifies under the statute.

## FACTS AND PROCEEDINGS

*The Charged Incident*

At the request of her granddaughter, Nancy, Erma W. went to the front door where she saw defendant, a former neighbor, talking to the victim, Nancy's father. For months, defendant had accused the victim of having an intimate relationship with defendant's wife. Suddenly, defendant "sucker punched" the victim and left in his car. About 20 to 30 minutes later, the victim was sitting in his garage with his back to the entrance. A 10-year-old neighbor came over to visit the victim's son when he saw defendant pull up in a maroon sports utility vehicle (SUV) and walk into the garage. Without saying anything, defendant raised his hand and hit the victim on the head with an object. The victim felt two hits to the back of his head, tried to stand up, and collapsed to the floor. He then looked up and saw defendant towering over him with his hand up, holding an object with a long handle that the victim initially thought was his hatchet he kept in the garage.

Nancy, who was standing near the back door, initially testified that she saw defendant walk up with an object she described as a sledgehammer and hit her father. However, on cross-examination, Nancy grew confused and made inconsistent statements about whether she saw the blow. On redirect examination, Nancy said she "saw [defendant] hitting my dad" and she saw her "dad put his arms up" across his face, and then she went to her grandmother's room. Erma W. testified that Nancy came to her bedroom and was "very upset." Erma W. went to the door and saw defendant getting into his maroon SUV with a bloody hammer in his hand and speed away. She then went to the garage and found the victim was bleeding from his head. He was hospitalized and treated for severe injuries.

2

The responding police officer went to defendant's home, and his family directed the officer to an outbuilding where he lived. There was a broken sledgehammer with a splatter of red substance on it outside of the building, but the officer could not tell whether the substance was blood. Erma W. identified the sledgehammer as the weapon she saw defendant carrying.

*Trial Proceedings*

Defendant was charged with assault with a deadly weapon. (§ 245, subd. (a)(1).) The information further alleged that he personally inflicted great bodily injury upon the victim. (§ 12022.7, subd. (a).)

The case was tried by a jury. After Nancy's inconsistent testimony, defense counsel moved to strike "some or all of Nancy's testimony" on hearsay grounds. Specifically, he asked the court to strike "a lot of her testimony that wasn't directly to observation [*sic*]" because he did not believe Nancy saw defendant hit her dad but likely saw defendant come into the garage and then ran to her grandmother. He conceded that Nancy, who was eight years old at the time of the trial, might have struggled with distinguishing what she saw as opposed to what she knew. The prosecutor countered that the issues raised by trial counsel went to the weight of the evidence, not its admissibility. The prosecutor agreed that her testimony was "a little bit all over the place" but one of the issues for the jury to consider in evaluating her testimony was her "obvious fear" on the witness stand. The prosecutor described how Nancy presented the second part of her testimony "dominantly hunched over where [one] could barely see her head above the witness table, her back to the defendant." The prosecutor further noted that after she was asked to look at defendant during her testimony, she testified with her hand up, blocking her eye.

The court denied the motion to strike, explaining: "[Nancy] appeared to be extremely frightened. She would essentially turn her back to me, put the microphone down almost underneath the witness stand to testify. She did appear to be frightened. [¶]

3

She's extremely young." The court further reasoned: "[S]ometimes it did seem like she answered depending on who was asking her the question. So the Court's of the opinion that it's either prior consistent or inconsistent statements. [¶] I thought defense counsel did a good job -- or an excellent job in terms of bringing out the possibility that she never actually saw the blow, but it's hard for this Court to say when she was relying on something that she was told, because multiple times she would say, yes, I was told some things, but then when pressed what she was told about, she couldn't come up with anything specific. [¶] So I do think it goes to the weight, not the admissibility, and I'm sure defense counsel will bring that out clearly on closing argument."

The jury found defendant guilty of assault with a deadly weapon and found the special allegation true. The trial court sentenced defendant to the middle term of three years in state prison plus an additional three years for the enhancement.

## DISCUSSION

### I

*Motion to Strike*

Defendant argues the trial court prejudicially erred in refusing to strike Nancy's testimony because it was inherently incredible and based on inadmissible hearsay. The People argue that the court did not err in declining to strike the testimony and any alleged error was harmless in light of the extensive evidence against defendant. We conclude the court's ruling was correct.

A trial court's ruling on the admission and exclusion of evidence, including a ruling on a motion to strike testimony, is reviewed for abuse of discretion. (*People v. Thompson* (2010) 49 Cal.4th 79, 128, 130.) We will not disturb the trial court's ruling on appeal "except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9-10.) "It is for the trier of the fact to resolve

4

inconsistencies and contradictions, if any, in the evidence, [citation], unless it can be stated the evidence is inherently improbable or incredible as a matter of law." (*People v. Knighton* (1967) 250 Cal.App.2d 221, 231.) Evidence is inherently improbable when it is "unbelievable upon its face or is physically impossible." (*People v. Carpenter* (1955) 136 Cal.App.2d 726, 728.)

Here, Nancy's testimony was neither unbelievable on its face nor physically impossible. While she gave inconsistent statements about whether she saw the actual blow, her statements that she saw defendant in the garage and went to get her grandmother were consistent with the other witnesses' testimony and it was not inherently improbable or physically impossible that she witnessed defendant strike her father. The contradictions in her testimony went to its weight and were for the jury to resolve. "Contradictions and inconsistencies in the testimony of a witness alone will not constitute inherent improbability." (*People v. Amadio* (1914) 25 Cal.App. 729, 730.) This is because it is the sole province of the trier of fact to determine the credibility of a witness and resolve evidentiary conflicts. (*People v. Maury* (2003) 30 Cal.4th 342, 403.) Further, defendant's reliance on *People v. Lang* (1974) 11 Cal.3d 134 is not well taken. There, our high court concluded that the defendant's appellate counsel was ineffective for failing to raise a challenge to the sufficiency of the evidence because "[a] properly briefed argument . . . might well have led the Court of Appeal to conclude the alleged assaults were physically impossible." (*Id.* at p. 139.) But the court did not conclude that the testimony was in fact inherently improbable or physically impossible. (*Ibid.*) Accordingly, *Lang* is not apposite. Defendant's reliance on *U.S. v. Chancey* (11th Cir. 1983) 715 F.2d 543, a nonbinding sufficiency of the evidence case, is similarly unavailing. There, the incredible testimony of a single witness was insufficient to support the conviction. (*Id.* at pp. 546-547.) Here, the conviction was supported by the testimony of multiple witnesses and physical evidence. Thus, defendant's citation to *Chancey* is unpersuasive.

Further, Nancy's testimony was not based on inadmissible hearsay. " 'Hearsay evidence' is evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated." (Evid. Code, § 1200, subd. (a).) Nancy was asked about whether adults told her who hit her father several times, and she repeatedly denied that anyone told her that defendant hit her father. While Nancy gave inconsistent statements about whether she saw defendant deliver the blow, she insisted that she saw defendant's vehicle herself and that is how she knew who it was. As the trial court observed, "[I]t's hard for this Court to say when she was relying on something that she was told, because multiple times [Nancy] would say, yes, I was told some things, but then when pressed what she was told about, she couldn't come up with anything specific." Defendant did not and cannot show which portions of Nancy's testimony, if any, were based on inadmissible hearsay, so he instead contends that the entirety of her testimony should have been stricken. Not so. Where the record does not clearly indicate that the testimony was hearsay, the trial court may properly decline to strike the testimony. (See *Pfingsten v. Westenhaver* (1952) 39 Cal.2d 12, 19.)

## II

### *Mental Health Diversion*

Defendant argues this matter must be remanded to give the trial court the opportunity to consider granting him mental health diversion as authorized by section 1001.36, which became effective June 27, 2018, after his judgment was entered. (Stats. 2018, ch. 34, § 24.) He points to evidence in the record showing he suffers from a qualifying mental health disorder, schizophrenia.

Section 1001.36 authorizes a trial court to grant "pretrial diversion," a postponement of prosecution to allow the defendant to undergo mental health treatment, if the defendant meets specified requirements. (§ 1001.36, subds. (a), (c).) Successful completion of diversion results in the dismissal of the original charges. (§ 1001.36, subd. (e).) Section 1001.36 provides pretrial diversion may be granted if the trial court finds all

6

of the following criteria are met: (1) the defendant suffers from a recently diagnosed mental disorder enumerated in the statute; (2) the disorder was a significant factor in the commission of the charged offense, and that offense is not one of the offenses enumerated in subdivision (b); (3) "[i]n the opinion of a qualified mental health expert, the defendant's symptoms of the mental disorder motivating the criminal behavior would respond to mental health treatment"; (4) the defendant consents to diversion and waives his or her right to a speedy trial; (5) the defendant agrees to comply with treatment as a condition of diversion; and (6) the defendant will not pose an unreasonable risk of danger to public safety, as defined in section 1170.18, if treated in the community. (§ 1001.36, subd. (b)(1)-(2).) If the treatment under pretrial diversion is deemed successful, the charges shall be dismissed and the defendant's criminal record expunged. (§ 1001.36, subds. (b)(1)(A)-(C), (c)(3), (e).)

The statute further provides: "At any stage of the proceedings, the court may require the defendant to make a prima facie showing that the defendant will meet the minimum requirements of eligibility for diversion and that the defendant and the offense are suitable for diversion. The hearing on the prima facie showing shall be informal and may proceed on offers of proof, reliable hearsay, and argument of counsel. If a prima facie showing is not made, the court may summarily deny the request for diversion or grant any other relief as may be deemed appropriate." (§ 1001.36, subd. (b)(3).)

The People argue that section 1001.36 is inapplicable to already-adjudicated matters. Whether a particular statute is intended to apply retroactively is a matter of statutory interpretation. (*In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*); *People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 307 (*Lara*).) In general, new criminal legislation is presumed to apply prospectively unless the statute expressly declares a contrary intent. However, where the Legislature has reduced punishment for criminal conduct, an inference arises under *Estrada* " 'that, in the absence of contrary indications, a legislative body ordinarily intends for ameliorative changes to the criminal law to

7

extend as broadly as possible, distinguishing only as necessary between sentences that are final and sentences that are not.' [Citations.]" (*Lara, supra*, at p. 308.) Subsequent to briefing in this case, the Supreme Court decided *People v. Frahs* (2020) 9 Cal.5th 618 (*Frahs*). It is now clear that section 1001.36 must be given retroactive application, and defendant is entitled to a limited remand to the trial court for a determination of his eligibility for mental health diversion. (*Frahs, supra*, at pp. 640-641.)

In *Frahs*, our Supreme Court concluded *Estrada*'s inference of retroactivity applies to section 1001.36 such that defendants with qualifying mental disorders whose cases are not yet final are entitled to limited remand for the trial court to determine whether they are eligible for mental health diversion. (*Frahs, supra*, 9 Cal.5th at pp. 624-625; see *Estrada, supra*, 63 Cal.2d 740.) The "possibility of being granted mental health diversion rather than being tried and sentenced 'can result in dramatically different and more lenient treatment.' " (*Frahs, supra*, at p. 631, quoting *Lara, supra*, 4 Cal.5th at p. 303.) As the court explained, "the impact of a trial court's decision to grant diversion can spell the difference between, on the one hand, a defendant receiving specialized mental health treatment, possibly avoiding criminal prosecution altogether, and even maintaining a clean record, and on the other, a defendant serving a lengthy prison sentence." (*Frahs, supra*, at p. 631.) Thus, "the ameliorative nature of the diversion program places it squarely within the spirit of the *Estrada* rule," and the program retroactively applies to defendants whose cases are not yet final. (*Ibid.*) That is the case for defendant here.

Defendant appears to meet the first threshold requirement for eligibility for mental health diversion—he suffers from a qualifying mental disorder schizophrenia. (§ 1001.36, subd. (b)(1)(A); *Frahs, supra*, 9 Cal.5th at p. 640.) A conditional remand for the trial court to conduct a mental health diversion eligibility hearing is therefore appropriate under the circumstances.

## DISPOSITION

8

We conditionally reverse defendant's judgment and remand to the trial court for an eligibility determination under section 1001.36. If the trial court finds that defendant suffers from a mental disorder, does not pose an unreasonable risk of danger to public safety, and otherwise meets the six statutory criteria (as nearly as possible given the postconviction procedural posture of this case), then the court may grant diversion. If defendant successfully completes diversion, then the court shall dismiss the charges. However, if the court determines that defendant does not meet the criteria under section 1001.36, or if defendant does not successfully complete diversion, then his convictions and sentence shall be reinstated.

/s/
RAYE, P. J.

We concur:


/s/
HULL, J.


/s/
DUARTE, J.